| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Kevin T. Simon, Esq. - SBN 180967<br>SIMON RESNIK HAYES LLP<br>Attorneys At Law<br>15233 Ventura Blvd., Suite 250<br>Sherman Oaks, CA 91403<br>Tel: (818) 783-6251<br>Fax: (818) 783-6253<br>E-mail: kevin@srhlawfirm.com<br><br><br><br>☐  Debtor appearing without attorney<br>☒  Attorney for Debtor | FOR COURT USE ONLY |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| In re:<br><br><br>JORGE A. ROMERO<br><br><br><br><br>Debtor(s) | CASE NO: 1:08-bk-19730-MT<br>CHAPTER: 13<br><hr>**NOTICE OF MOTION AND MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (REAL PROPERTY)**<br><hr>[No hearing required unless requested under LBR 9013-1(o)] |

**Creditor Name:** <u>Carlos Acevedo, his Successors and/or Assigns</u>

1.  TO THE CREDITOR, CREDITOR'S ATTORNEY AND OTHER INTERESTED PARTIES:

2.  NOTICE IS HEREBY GIVEN that the Debtor hereby moves this court for an order, without a hearing, avoiding a lien on the grounds set forth below.

3.  **Deadline for Opposition Papers:**
    Pursuant to LBR 9013-1(o), any party objecting to the motion may file and serve a written objection and request a hearing on this motion. If you fail to file a written response within 14 days of the date of service of this notice of motion and motion, plus an additional 3 days unless this notice of motion and motion was served by personal delivery or posting as described in F.R.Civ.P. 5(b)(2)(A)-(B), the court may treat such failure as a waiver of your right to oppose this motion and may grant the requested relief.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  **Type of Case:**

    a.  ☒ A voluntary petition under chapter    ☐ 7  ☐ 11  ☐ 12  ☒ 13 was filed on: _12/02/2008_

    b.  ☐ An involuntary petition under chapter    ☐ 7  ☐ 11 was filed on: _____

        ☐ An order of relief under chapter    ☐ 7  ☐ 11 was entered on: _____

    c.  ☐ An order of conversion to chapter    ☐ 7  ☐ 11  ☐ 12  ☐ 13 was entered on: _____

    d.  ☐ Other:

5.  **Procedural Status:**

    a.  ☒ Name of trustee appointed (*if any*): _Elizabeth F. Rojas_

    b.  ☐ Name of attorney of record for trustee (*if any*): _____

6.  Debtor claims an exemption in the subject real property under:

    a.  ☒ California Code of Civil Procedure § _703.140(b)(1)_ (Homestead): Exemption amount claimed on
        schedules: $ _1.00_

    b.  ☐ California Code of Civil Procedure § _____ Exemption amount claimed on
        schedules: $ _____

    c.  ☐ Other statute (*specify*): _____

7.  Debtor's entitlement to an exemption is impaired by judicial lien, the details of which are as follows:

    a.  Date of entry of judgment (*specify*): _See Attached_ Page
    b.  Case name (*specify*): _____
    c.  Docket number (*specify*): _____
    d.  Date of recordation of lien (*specify*): _____
    e.  Recorder's instrument number or map/book/page (*specify*): _____

8.  The property claimed to be exempt is as follows:

    a.  Street address (*specify*): _7235 Zelzah Avenue, Reseda, CA  91335_

    b.  Legal description (specify): _Lot 162 of Tract No 4789, in the City of Los Angeles, County of Los Angeles,_
        _State of CA, as per map recorded in Book 90 Page 84 and 85 of maps_    ☒ See attached page

9.  Debtor acquired the property claimed exempt on the following date (*specify*): _03/13/1998_

10. Debtor alleges that the fair market value of the property claimed exempt is: $ _407,000.00_

11. The subject property is encumbered with the following liens (list mortgages and other liens in order of priority and place
    an "X" as to the lien to be avoided by this motion):

| Name of Lien Holder | "X" | Date Lien Recorded | Original Lien Amount | Current Lien Amount | Date of Current Lien |
|---|---|---|---|---|---|
| See Attached Page | ☐ | | $ | $ | |
| | ☐ | | $ | $ | |
| | ☐ | | $ | $ | |
| | ☐ | | $ | $ | |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**JORGE A. ROMERO**
**1:08-bk-19730-MT**

7. Debtors' entitlement to an exemption is impaired by judicial lien, the details of which are as follows:

    a. Date of Entry of Judgment: 1/10/2011
    b. Case Name: Carlos Acevedo vs. Jorge Romero Investments, Inc., et al.
    c. Docket Number: LC085378
    d. Date of Recordation of Lien: 12/28/2011
    e. Recorder's Instrument Number or Map/Book/Page: 20111768095

    a. Date of Entry of Judgment: 1/10/11
    b. Case Name: Carlos Acevedo vs. Jorge Romero Investments, Inc., et al.
    c. Docket Number: LC085378
    d. Date of Recordation of Lien: 1/12/2012
    e. Recorder's Instrument Number or Map/Book/Page: 20120059522

    a. Date of Entry of Judgment: 1/10/11
    b. Case Name: Carlos Acevedo vs. Jorge Romero Investments, Inc., et al.
    c. Docket Number: LC085378
    d. Date of Recordation of Lien: 2/27/2012
    e. Recorder's Instrument Number or Map/Book/Page: 20120306769

    a. Date of Entry of Judgment: 11/18/2011
    b. Case Name: People of California by and through the California Corporations Commission
    c. Docket Number: BC462695
    d. Date of Recordation of Lien: 4/30/2012
    e. Recorder's Instrument Number or Map/Book/Page: 20120638541

    a. Date of Entry of Judgment: 5/12/2012
    b. Case Name: Carlos Acevedo vs. Jorge Romero Investments, Inc., et al.
    c. Docket Number: LC085378
    d. Date of Recordation of Lien: 5/23/2012
    e. Recorder's Instrument Number or Map/Book/Page: 20120771090

JORGE A. ROMERO
1:08-bk-19730-MT

11.  The subject property is encumbered with the following liens (list mortgages and other liens in order of
     priority and place an "X" as to the lien to be avoided by this Motion):

| Name of Lien Holder | X | Date Lien Recorded | Original Lien Amount | Current Lien Amount | Date of Current Lien |
|---|---|---|---|---|---|
| Countrywide Home Loans | | 7/26/05 | $487,500.00 | $469,420.72 | 2/1/09 |
| U.S. Bank, N.A. | | 7/21/06 | $102,000.00 | $103,952.78 | 4/8/09 |
| | | | | | |
| Carlos Acevedo | x | 12/28/11 | $137,273.00 | $137,273.00 | 12/28/11 |
| Carlos Acevedo | x | 1/12/12 | $137,273.00 | $137,273.00 | 1/12/12 |
| Carlos Acevedo | x | 2/27/12 | $137,273.00 | $137,273.00 | 2/27/12 |
| People of the State of CA c/o The California Corporations Commission | | 4/30/12 | $2,858,734.88 | $2,858,734.88 | 5/20/13 |
| Carlos Acevedo | x | 5/23/12 | $110,000.00 | $110,000.00 | 5/23/12 |

4

12. Debtor attaches copies of the following documents in support of the motion (as appropriate):

    a.  ☒ Schedule C listing all exemptions claimed by Debtor

    b.  ☒ Appraisal of the property

    c.  ☒ Documents showing current balance due as to the liens specified in paragraph 11 above

    d.  ☒ Recorded Abstract of Judgment

    e.  ☐ Recorded Declaration of Homestead (Homestead Exemption)

    f.  ☒ Declaration(s)

    g.  ☐ Other (specify):

13. Total number of attached pages of supporting documentation: _____

14. Debtor declares under penalty of perjury under the laws of the United States that the foregoing is true and correct.

WHEREFORE, Debtor prays that this court issue an order (a copy of the form of which is submitted herewith and has been served) avoiding the creditor's lien.

Date: 06/10/2013

Signature of Debtor

Jorge A. Romero
Printed name of Debtor

Date: 06/10/2013

Signature of attorney for Debtor

Kevin T. Simon, Esq.
Printed name of attorney for Debtor

This form is optional   It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 3          F 4003-2.1.AVOID.LIEN.RP. MOTION

## DECLARATION OF JORGE A. ROMERO IN SUPPORT OF MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) REAL PROPERTY

I, Jorge A. Romero, do hereby declare all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all the below statements.

1.      I am the Debtor in the instant Case, Case Number: 1:08-bk-19730-MT, which was filed on December 2, 2008.

2.      I own real property (hereinafter "Property") located at 7235 Zelzah Avenue, Reseda, CA 91335.

3.      I declared a Homestead Exemption of $1.00 in my bankruptcy pursuant to California Code of Civil Procedure § 703.140(b)(1). (Attached hereto as Exhibit "A" is a true and correct copy of Amended Schedule "C.").

4.      The first deed of trust on the Property is held by Countrywide Home Loans. The amount owing on the first deed of trust as of February 1, 2009 was $469,420.72 based on the billing statement from Countrywide Home Loans. (Attached hereto as Exhibit "B" is a true and correct copy of the billing statement from Countrywide Home Loans and recorded Deed of Trust evidencing the priority of the liens.)

5.      The second deed of trust on the Property is held by U.S. Bank, National Association. The amount owing on the second deed of trust as of April 8, 2009 was $103,952.78 based on Proof of Claim 6-1 filed by U.S. Bank, National Association. (Attached hereto as Exhibit "C" is a true and correct copy of Proof of Claim 6-1 filed by U.S. Bank, National Association and recorded Deed of Trust evidencing the priority of the liens.)

6.      On or about August 11, 2009, Carlos Acevedo filed a complaint in State Court against me. (Attached hereto as Exhibit "D" is a true and correct copy of the filed Carlos Acevedo Complaint.).

7.      On or about January 10, 2011, Carlos Acevedo obtained a Judgment against me in the amount of $137,273.00 and on December 28, 2011, recorded an Abstract of Judgment accordingly. (Attached hereto as Exhibit "E" is a true and correct copy of the recorded Carlos Acevedo judgment.). Moreover, this Judgment was recorded during the pendency of my bankruptcy

case.

7.    On or about January 10, 2011, Carlos Acevedo obtained a Judgment against me in the amount of $137,273.00 and on January 12, 2012, recorded an Abstract of Judgment accordingly. (Attached hereto as Exhibit "F" is a true and correct copy of the recorded Carlos Acevedo judgment.). Moreover, this Judgment was recorded during the pendency of my bankruptcy case.

8.    On or about January 10, 2011, Carlos Acevedo obtained a Judgment against me in the amount of $137,273.00 and on February 27, 2012, recorded an Abstract of Judgment accordingly. (Attached hereto as Exhibit "G" is a true and correct copy of the recorded Carlos Acevedo judgment.). Moreover, this Judgment was recorded during the pendency of my bankruptcy case.

9.    On or about November 18, 2011, the People of the State of California, by and through the California Corporations Commission, obtained a Judgment against me in the amount of $2,858,734.88 and on April 30, 2012, recorded an Abstract of Judgment accordingly. (Attached hereto as Exhibit "H" is a true and correct copy of Proof of Claim 8 filed by the People of the State of California which includes the recorded judgment.). Moreover, this Judgment was recorded during the pendency of my bankruptcy case.

10.    On or about May 12, 2011, Carlos Acevedo obtained a Judgment against me in the amount of $110,000.00 and on May 23, 2012, recorded an Abstract of Judgment accordingly. (Attached hereto as Exhibit "I" is a true and correct copy of the recorded Carlos Acevedo judgment.). Moreover, this Judgment was recorded during the pendency of my bankruptcy case.

11.    Based upon the attached Appraisal, the value of the Property is estimated at $407,000.00. (Attached hereto as Exhibit "J" is a true and correct copy of the Appraisal and Declaration of Mohammad Bagheri from the Motion to Extinguish Lien filed on March 9, 2009.).

12.    The prior liens on the Property, including the $1.00 Homestead Exemption, exceed the value of the Property. Therefore, the Carlos Acevedo liens impair my Homestead Exemption and are void pursuant to 11 U.S.C. § 522(f).

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration is executed June 10, 2013, at Sherman Oaks, California.

Jorge A. Romero

## LEGAL DESCRIPTION

LOT 162 OF TRACT NO. 4789, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 90 PAGES 84 AND 85 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THE NORTH 32.93 FEET THEREOF.

ALSO EXCEPT THE WEST 135 FEET THEREOF.

EXHIBIT "A"

B6C (Official Form 6C) (12/07)

In re     **Jorge Alberto Romero**                                    Case No   **1:08-bk-19730-MT**
                                          Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT - AMENDED

Debtor claims the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $136,875
  ☐ 11 U.S.C. §522(b)(2)
  ☑ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** 7235 Zelzah Ave. Reseda, CA 91335 (Primary Residence) | C.C.P. § 703.140(b)(1) | 1.00 | 407,000.00 |
| 14324 Killion Street Sherman Oaks, CA 91401 | C.C.P. § 703.140(b)(5) | 1.00 | 528,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** Wells Fargo | | 1,050.00 | 1,050.00 |
| **Business Checking Account** Wells Fargo | C.C.P. § 703.140(b)(5) | 2,000.00 | 2,000.00 |
| **Household Goods and Furnishings** Furniture and Appliances | C.C.P. § 703.140(b)(3) | 4,000.00 | 4,000.00 |
| **Wearing Apparel** Clothing | C.C.P. § 703.140(b)(3) | 3,000.00 | 3,000.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** 1999 Chevrolet Bobtail 1992 Dodge Cargo Van 1997 Mercedes Benz E320 (Collateralized in American General Loan) | C.C.P. § 703.140(b)(2) C.C.P. § 703.140(b)(1) | 3,300.00 5,937.00 | 29,550.00 |

|  |  | Total | 20,239.00 | 975,550.00 |
|---|---|---|---|---|

  **0**    continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2013 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

EXHIBIT "B"



**Countrywide**
**HOME LOANS**

PO Box 5170
Simi Valley, CA 93062 5170

**Número de Cuenta 110658288**
Dirección de la Propiedad
7235 Zelzah Avenue

### CON EL PROPÓSITO DE INFORMARLE

0045177 01 AV 0.324 **AUTO  T1 3 2579 91335-3218
MSO XW AG 034 ——1–2—— C0000067 IN 4 P45222
JORGE ALBERT ROMERO
7235 Zelzah Ave
Reseda CA 91335-3218

Il.l....ll.ll....ll.l.l.l..ll...l.l...ll.l.l....l.l.l.l..ll

**AVISO IMPORTANTE**

Si usted no desea que le enviemos su estado de cuenta  mensual en el futuro, favor llámenos al 1-800-669-5224.

Este estado de cuenta se le ofrece solamente para propósitos informativos y no se debe interpretar como un intento de cobro contra usted personalmente. Mientras que su obligación con Countrywide puede que sea descartada, por la operación de la ley, Countrywide ha conservado su capacidad de enforzar sus derechos contra la propiedad que respalda este préstamo en caso de que exista el incumplimiento.

Si usted está implicado actualmente en el procedimiento de un capítulo 13, le recordamos que se le requiere obedecer todas las órdenes de la corte, incluyendo las que confirman o modifican los términos de su plan de reembolso. Usted puede desatender la informacion de pago/cupón incluido, al grado que este represente algún conflicto con cualquier orden o requisito de la corte.

Sus documentos del préstamo indican que si no recibimos sus pagos actuales del préstamo para el **02/17/2009**, es posible que se le cobre un recargo de **$152.34**.

Este documento no representa un estado de cuenta de la cantidad necesaria para cancelar su préstamo.

| **RESUMEN DEL PRÉSTAMO HIPOTECARIO** | **Saldo Principal** a partir de 01/22/2009 | $469,420.72 |
|---|---|---|

Monitoreamos y grabamos llamadas al azar para asegurar buena calidad.
Tal vez le cobremos un cargo por cada pago devuelto o rechazado por su institución financiera, sujeto a las leyes aplicables.

Countrywide tiene el deber de informarle por ley que este comunicado proviene de un recaudador de deudas.

**INSTRUCCIONES DE PAGO**
1. Por favor
   • no envíe dinero en efectivo
   • no sujete el cheque al cupón de pago
   • no incluya correspondencia

2. Escriba el número de cuenta en el cheque o giro postal.

3. Haga el cheque pagadero a
   **Countrywide Home Loans**
   Attn: Remittance Processing
   PO BOX 10219
   VAN NUYS CA 91410 0219

| Número de Cuenta | 110658288 | (3) |
|---|---|---|
| Jorge Albert Romero | | |
| 7235 Zelzah Avenue | | |
| Reseda, CA 91335 | | |

**02/01/2009**   **$3,318.55**
Por favor actualice la información del e-mail ubicado en el dorso de este cupón.

7x78

VEA AL REVERSO PARA LAS INSTRUCCIONES DE PAGO

Il.l.l..l.l.ll.|||ll...ll|ll..l.l.l...l.l.l..l|ll..lll.l...|ll...|..l.l|l.l.l|

**Countrywide**
PO BOX 10219
VAN NUYS CA 91410-0219

| | |
|---|---|
| Principal Adicional | |
| Cuenta en Custodia Adicional | |
| Otro | |
| Total del Cheque | |



This page is part of your document - DO NOT DISCARD

**05 1762467**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**07/26/05 AT 08:00am**

TITLE(S) :

L E A D   S H E E T

FEE

FEE $ 70  RR
DAF $
C-20

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

7/26/05

05 1762467

# CHICAGO TITLE

Recording Requested By
P. WEBBER-JAMES

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By
NEDELF A. DE LOS REYES

S6080335-A43 ── [Space Above This Line For Recording Data] ─ ──

7313 LG                    00011065828807005
[Escrow/Closing #]              [Doc ID #]

## DEED OF TRUST

MIN 1000157-0005456194-5

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JULY 15, 2005        , together with all Riders to this document.
(B) "Borrower" is
JORGE ALBERTO ROMERO, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

CALIFORNIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
Initials
-6A(CA) (0207)    CHL (09/02)(d)    VMP MORTGAGE FORMS - (800)521-7291    Form 3005  1/01
CONVVA





7/26/95

3

DOC ID #: 00011065828807005

Borrower's address is
7235 ZELZAH AVENUE, [RESEDA AREA] LOS ANGELES, CA 91335-3218
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE MSN TO 02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JULY 15, 2005      The Note states that Borrower owes Lender
FOUR HUNDRED EIGHTY SEVEN THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 487,500.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   AUGUST 01, 2035  .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider     [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii)

(UHP) -6A(CA) (0207)        CHL (09/02)          Page 2 of 16                    Initials: _____
                                                                               Form 3005 1/01

05 1762467

7/26/05

DOC ID #: 0003105582880?005

conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

                    COUNTY                of               LOS ANGELES
            [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

LOT 162 OF TRACT NO. 4789, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 90 PAGES 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.   EXCEPT THE NORTH 37.93 FEET THEREOF.  ALSO EXCEPT THE WEST 135 FEET THEREOF.

Parcel ID Number 2121-000-062                              which currently has the address of
                7235 ZELZAH AVENUE, (RESEDA AREA) LOS ANGELES
                                                [Street/City]
California 91335-3218 ("Property Address"):
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)     CHL (09/02)          Page 3 of 16          Initials          Form 3005 1/01

05  1762467

7/26/05

ʃ

DOC ID #: 00011065828607005

but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

6A(CA) (0207)    CHL (09/02)         Page 4 of 16              Initials:           Form 3005 1/01

05 1762467

7/26/05

DOC ID #: 00011065826807005

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)    CHL (09/02)    Page 5 of 16    Initials    Form 3005 1/01

05 1762467

7/26/05

DOC ID #: 00011065828007005

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

05 1762467

7126105

DOC ID #: 0001106582680/005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)    CHL (09/02)    Page 7 of 16    Initials _____    Form 3005 1/01

05 1762467

7/26/05

9

DOC ID #: 00011065828807005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

7/26/95

DOC ID #: 00011065826807005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)        CHL (09/02)              Page 9 of 16              Initials        Form 3005  1/01

05  1762467

7/26/05

DOC ID #: 00011065828807005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

-6A(CA) (0207)      CHL (09/02)      Page 10 of 16      Initials _____      Form 3005 1/01

05 1762467

7/26/05

DOC ID #: 00011065828807005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (09/02)          Page 11 of 16          Initials _____          Form 3005 1/01

05 1762467

7/26/05

(3

DOC ID #: 0001106582086C7005

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

05  1762467

2 5

7/26/05

u4

DOC ID #: 00011065928007005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Loan -6A(CA) (0207)        CHL (09/02)              Page 13 of 16

Initals

Form 3005  1/01

05  1762467

2-6

7/26/05

DOC ID #: 0001106582B807005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

05 1762467

-6A(CA) (0207)      CHL (09/02)      Page 14 of 16      Init als      Form 3005 1/01

7/26/05

16

DOC ID #: 00011065628807005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                 JORGE ALBERTO ROMERO       -Borrower

_____        _____ (Seal)
                                                            -Borrower

                                 _____ (Seal)
                                                            -Borrower

                                 _____ (Seal)
                                                            -Borrower

-6A(CA) (0207)      CHL (09/02)      Page 15 of 16          Form 3005 1/01

05  1762467

7/26/05

DOC ID #: 00011065828807005

State of California
County of Los Angeles

On July 15, 2005                    before me, Mary Ann Winkles - Notary Public

                                    Jorge Alberto Romero        personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument

WITNESS my hand and official seal

                                    Mary Ann Winkles (Seal)

MARY ANN WINKLES
COMM. #1424708
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. FEB. 13, 2007

GA(CA) (0207)     CHL (09/02)     Page 16 of 18                    Form 3005  1/01

05 1762467

7/26/05

18

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By.
NEDDIE A. DE LOS REYES

|  7313-LG | 00011065828807005 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

This ADJUSTABLE RATE RIDER is made this FIFTEENTH      day of
JULY, 2005      , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
CONV
• BC - ARM Rider
1U193-XX (06/04)(d)              Page 1 of 5                 Initials





05  1762467

7/26/05

19

DOC ID #: 00011065828807005
same date given by the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the property described in the Security Instrument and located at
7235 ZELZAH AVENUE, (RESEDA AREA) LOS ANGELES, CA 91335-3218

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      6.350 %   The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A) Change Dates
    The interest rate I will pay may change on the  first          day of
AUGUST, 2007          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

    (B) The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    (C) Calculation of Changes
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX & 35/100                     percentage point(s) (    6.350 %) to the Current Index.

CONV
● 6C - ARM Rider
1U193-XX (06/04)                    Page 2 of 5

Initials

05 1762467

31

7/26/05

DOC ID #: 00011065828807005

The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.850 % or less than     6.350 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) (     1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than     13.350 % or less than     6.350 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

CONV
● BC – ARM Rider
1U193-XX (05/04)                    Page 3 of 5                    Initials _____

05 1762467

7/26/05

η|

DOC ID #: 00011065828807005

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• BC - ARM Rider
1U193-XX (06/04)

Page 4 of 5

Initials

05 1762467

7/26/05

$\gamma\gamma$

DOC ID #: 00011065828807005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)
JORGE ALBERTO ROMERO                        - Borrower

_____(Seal)
                                            - Borrower

_____(Seal)
                                            - Borrower

_____(Seal)
                                            - Borrower

CONV
● BC - ARM Rider
1U193-XX (05/04)            Page 5 of 5

05  1762467

34

γ3

## ILLEGIBLE NOTARY SEAL DECLARATION

GOVERNMENT CODE 27362.7
I certify under penalty of perjury that the notary seal on the document to which this
statement is attached reads as follows:

Name of Notary ___Mary Ann Winkle___

Date Commission Exp ___June 13, 2007___

Notary Identification Number ___1424208___

Vendor Identification Number ___TCCI___

County Where Bond Is Filed ___LA___

Place of Execution of this Declaration:          Norwalk

DATE: __7, 26 /05__                      _____
                                              Signature

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THIS MATERIAL IS A TRUE COPY OF
THE ORIGINAL MATERIAL CONTAINED IN THE DOCUMENT:

Place of Execution of this Declaration          Norwalk          .

DATE: ____/____/05__                     _____
                                              Signature

State of California          )
County of _____      )

On_____ before me,_____personally
appeared,_____

personally known to me (or proved to me the basis of satisfactory evidence) to be the person
(s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her their authorized capacity (ies), and that by
his/her/their signature (s) on the instrument the person (s), or the entity upon behalf of
which the person (s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature   _____

                              05 1762467

EXHIBIT "C"

## United States Bankruptcy Clerk

### CALIFORNIA - Central Dist. - San Fernando Div.

# PROOF OF CLAIM

In Re (Name of Debtor)

Jorge A. Romero

Case Number 08-19730
Chapter 13

NOTE: This from should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (Person or entity to whom debtor owes money or property)
U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-HE6

___ Check if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Address Where Notices Should be Sent

Wilshire Credit Corporation as servicer for the above named creditor
PO Box 1650
Portland, OR 97207-1650

Trustee Payment Address:
PO Box 8517, Portland, OR 97207

Telephone No. (503) 223-5600

___ Check if you have never received any notices from the bankruptcy court in this case.

___ Check if address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR
COURT USE ONLY

Account or Other Number By Which Creditor Identifies Debtor

Last Four Digits of Loan Number: 8602

Check here if this claim ___ replaces a previously filed claim, dated:
___ amends

| 1. | BASIS FOR CLAIM | |
|---|---|---|
| ___ | Goods Sold | ___ Retiree benefits as defined in 11 |
| ___ | Services performed | ___ Wages, salaries and compensations |
| X | Money loaned | Your social security number: |
| ___ | Personal injury/wrongful death | Unpaid compensation for services |
| ___ | Taxes | from _____ to _____ |
| ___ | Other (Describe briefly) | (date)    (date) |

| 2. | DATE DEBT WAS INCURRED: | 3. | IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|---|---|
| 07/11/06 | | | |

4.    CLASSIFICATION OF CLAIM. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

X  SECURED CLAIM $103,952.78 (See Attached Exhibit A)
Attach evidence of perfection of security interest
Brief Description of Collateral:
X  Real Estate ___ Motor Vehicle ___ Other (   )

Amount of arrearage and other charges included in secured claim above.
If any  3106.16 (See Attached Exhibit A)

___ UNSECURED NONPRIORITY CLAIM $
A claim is unsecured if there is no collateral or lien on property of the Debtor securing the claim or to the extent that the value of the property is less than the amount of the claim.

___ UNSECURED PRIORITY CLAIM $_____
Specify the priority of the claim.
___ Wages, salaries, or commissions (up to $4,000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)
___ Contributions to an employee benefit plan – U.S.C. § 507(a)(4)
___ Taxes or penalties of governmental units – U.S.C. § 507(a)(8)
___ Alimony, maintenance, or support owed to a spouse, former spouse, or child - U.S.C. § 507(a)(7)
___ Up to $1800 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6)
___ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)

| 5. | TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: | $___ (Unsecured) | $103,952.78 (Secured) | $___ (Priority) | $103,952.78 (TOTAL) |
|---|---|---|---|---|---|

THIS SPACE IS FOR
COURT USE ONLY

6.    CREDITS AND SETOFFS. The amount of all payments on this claim has been credited and deducted for the purpose of making This proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7.    SUPPORTING DOCUMENTS. Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not Available, explain. If the documents are voluminous, attach summary.

8    TIME-STAMPED COPY. To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print name and title, if any, of the creditor or other person authorized to file this claim (attach a copy of power of attorney, if any) |
|---|---|
| April 8, 2009 | /s/ Anita Frank Legal Assistant for Wilshire Credit Corporation |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**EXHIBIT A**
**TO PROOF OF CLAIM**

FILED BY Wilshire Credit Corporation as Servicer for U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-HE6
DATED April 8, 2009

CASE NUMBER:       08-19730

DEBTOR (S):        Jorge A. Romero

LOAN NUMBER:       Last Four Digits of Loan Number:  8602

AS OF December 02, 2008, THE PRINCIPAL AMOUNT OWING ON THE ABOVE LOAN WAS $100,943.61; INTEREST WAS DUE IN THE AMOUNT OF $2,898.33; PLUS OTHER CHARGES OF $110.84; less suspense $0.00; FOR A TOTAL DUE IN THE AMOUNT OF $103,952.78.

POST PETITION INTEREST TO ACCRUE ON THE PRINCIPAL BALANCE OF $100,943.61 AT THE RATE OF 11.35% PER ANNUM.

| ARREARAGES: | | |
|---|---|---|
| Installment payments: 10/1/2008 - 12/2/2008 | S | 2995.32 |
| Late Charges: | S | 99.84 |
| Escrow: | S | |
| Property Preservation: | S | 11.00 |
| BPO Fees: | S | |
| Legal: | S | |
| L/C Prior Sver: | S | |
| Other: | S | |
| Interest on Escrow: | S | |
| NSF Fees: | S | |
| Speed pay Fees: | S | |
| Less Funds in Suspense: | S | |
| TOTAL ARREARAGE CLAIM: | S | 3106.16 |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the dated of the filing of the bankruptcy.

Current payments are 998.44
P & I Payment: $998.44
Escrow: 0
HUD Forbearance: $0.00

Effective
Post-petition payments will be $998.44
P & I Payment: $998.44
Escrow: $0.00
HUD Forbearance: $0.00

* POC totals are for purposes of reinstatement only and does not indicate the amount necessary for a payoff.

*Adjustable Rate Mortgages have an adjustable rate and P&I may change every six months.



This page is part of your document - DO NOT DISCARD

06 1609357

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**07/21/06 AT 08:00am**

TITLE(S) :

L E A D    S H E E T

FEE

FEE $ 50 PP
DAF $ 4
C-20    13 2T

CODE
20

CODE
19

CODE
9

D.T.T.

NOTIFICATION SENT $4

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

# CHICAGO TITLE

Recording Requested By
FIRST STREET FINANCIAL INC.

And After Recording Return To
FIRST STREET FINANCIAL INC.
310 COMMERCE SUITE 150
IRVINE, CALIFORNIA 92602
Loan Number: 06062015

06 1609357

bobo 78150-A43

[Space Above This Line For Recording Data]

## DEED OF TRUST

THIS DEED OF TRUST is made this     11th     day of JULY, 2006
among the Trustor, JORGE ALBERTO ROMERO, A MARRIED MAN, AS HIS SOLE AND
SEPARATE PROPERTY

(herein "Borrower"), CHICAGO TITLE CO
535 N. BRAND BLVD 3RD FLOOR, GLENDALE, CALIFORNIA 91203
(herein "Trustee"), and the Beneficiary,
FIRST STREET FINANCIAL INC., A CALIFORNIA CORPORATION
. a corporation organized and
existing under the laws of  CALIFORNIA                                              whose address is
310 COMMERCE SUITE 150, IRVINE, CALIFORNIA 92602
(herein "Lender")

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
LOS ANGELES                                                                      , State of California
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2121-006-003

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
LIEN(S) OF RECORD.

which has the address of 7235 ZELZAH AVENUE, (RESEDA AREA), LOS ANGELES
                                    [Street]                                    [City]
California        91335         (herein "Property Address");
                [Zip Code]

CALIFORNIA-SECOND MORTGAGE-1/80
3805                                              Page 1 of 7                        DocMagic eFarms 800-649-1367
                                                                                    www.docmagic.com



TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property".

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JULY 11, 2006                          and extensions and renewals thereof (herein "Note"), in the principal sum of ONE HUNDRED TWO THOUSAND AND 00/100
Dollars (U S $ 102,000.00                    ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on AUGUST 1                    .
2021           . the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution) Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for the sums secured by this Deed of Trust

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust

CALIFORNIA-SECOND MORTGAGE-1/80
3805                                          Page 2 of 7                    DocMagic *eForms* 800-649-1362
                                                                            www docmagic com

06 1609357

5.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note

4.    **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any

5.    **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided, that such approval shall not be unreasonably withheld   All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender   Lender may make proof of loss if not made promptly by Borrower

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.    **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents

7.    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest  If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof  Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.    **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property

9.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest   Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any

06  1609357

demand made by the original Borrower and Borrower's successors in interest  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several  Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein  Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located  The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust  In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable  As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein

**14** Borrower's Copy.  Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender.  Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows.

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying. (1) the breach, (2) the action required to cure such breach, (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured, and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to

CALIFORNIA SECOND MORTGAGE-1/80
3805

Page 4 of 7

DocMagic *eFRMS* 800-649-1362
www.docmagic.com

06 1609357



bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust, and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred, (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust, (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original

06 1609357

Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. **Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

24. The following Riders are to be executed by Borrower [check box as applicable].

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER TO SECURITY INST |

_____ REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE _____
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____
Page _____, records of _____ County,
(or filed for record with recorder's serial number _____
County), California, executed by _____

as trustor (or mortgagor) in which _____

is named as beneficiary (or mortgagee) and _____

as trustee be mailed to _____

at _____

NOTICE A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature _____

DocMagic ℰℱⓇⓈ 800-649-1362
www.docmagic.com

06 1609357

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust

_____   _____
JORGE ALBERTO ROMERO        -Borrower                    -Borrower


_____   _____
-Borrower                    -Borrower


_____   _____
-Borrower                    -Borrower


State of California        )
                          ) ss
County of LOS ANGELES     )

On  7-12-06                        before me. Beverly Hysell, Notary Public

personally appeared  JORGE ALBERTO ROMERO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.


BEVERLY HYSELL
Commission # 1385114
Notary Public - California
Los Angeles County
My Comm Expires Nov 17, 2006

NOTARY SEAL

_____
NOTARY SIGNATURE

_____
(Typed Name of Notary)
BEVERLY HYSELL

CALIFORNIA-SECOND MORTGAGE-1/80
3805                          Page 7 of 7          DocMagic €Rerms 800-649-1362
                                                          www.docmagic.com

06 1609357

*9*

—————————— [Space Above This Line For Recording Data] ——————————

Loan Number: 06062015

# BALLOON RIDER

THIS BALLOON RIDER is made this 11th day of JULY 2006 , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to FIRST STREET FINANCIAL INC., A CALIFORNIA
CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at

7235 ZELZAH AVENUE, (RESEDA AREA), LOS ANGELES, CALIFORNIA 91335
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04                          Page 1 of 2          DocMagic *eFarms* 800-649-1362
                                                        www.docmagic.com

06 1609357

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider

10

_____    07-12-06    _____
Borrower JORGE ALBERTO    Date    Borrower    Date
ROMERO

_____    _____
Borrower    Date    Borrower    Date

_____    _____
Borrower    Date    Borrower    Date

MULTISTATE BALLOON RIDER
04/26/04                    Page 2 of 2    DocMagic ℰℛℴⅇℴ 800-649-1362
www.docmagic.com

06  1609357

# PREPAYMENT RIDER

Loan Number 06062015

Date   JULY 11, 2006

Borrower(s)  JORGE ALBERTO ROMERO

THIS PREPAYMENT RIDER (the "Rider") is made this 11th day of JULY
2006                    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
FIRST STREET FINANCIAL INC., A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

7235 ZELZAH AVENUE, (RESEDA AREA), LOS ANGELES, CALIFORNIA 91335
                              [Property Address]

ADDITIONAL COVENANTS  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

## A.   PREPAYMENT CHARGE

The Note provides for the payment of a prepayment charge as follows

6    .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
        I have the right to make payments of Principal at any time before they are due
A payment of Principal only is known as a "Prepayment "  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note
        The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes
        If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase

07/21/06

CALIFORNIA PREPAYMENT RIDER
(B&P PROVISION)
6/03                                       Page 1 of 2

DocMagic ℮Ⓡⓤⓝⓔ 800-643-1362
                    www.docmagic.com

06 1609357

If within   TWENTY-FOUR   ( 24      ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds      TWENTY percent (     20.000  %) of the unpaid balance, I will pay a Prepayment charge in an amount equal to   SIX     ( 6    ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds      TWENTY percent (     20.000  %) of the unpaid balance

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider

_____ (Seal)          _____ (Seal)
JORGE  ALBERTO  ROMERO   -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower


CALIFORNIA PREPAYMENT RIDER
(B&P PROVISION)
6/03                              Page 2 of 2

DocMagic €₤₨₥₥ 800-849-1362
www.docmagic.com

06  1609357

Loan Number  06062015

Date   JULY 11, 2006

Property Address   7235 ZELZAH AVENUE, (RESEDA AREA), LOS ANGELES,
CALIFORNIA 91335

*13*

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 2121-008-003

DocMagic CPhone 800-649-1362
www docmagic com

06 1609357

# LEGAL DESCRIPTION



LOT 162 OF TRACT NO. 4789, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 90 PAGES 84 AND 85 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THE NORTH 32.93 FEET THEREOF.

ALSO EXCEPT THE WEST 135 FEET THEREOF.

PLEGAL  03/25/99←

**06 1609357**

EXHIBIT "D"

**SUMMONS** FIRST AMENDED COMPLAINT
*(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

JORGE ROMERO INVESTMENTS, INC., A California Corporation,
GLOBAL CAPITAL INVESTMENTS, INC., A Business of Unknown
Provenance, JORGE ROMERO, An Individual, JORGE ROMERO JR,
An Individual, ALEJANDRO SOTO, an Individual and DOES 1-25,
Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

CARLOS ACEVEDO, an Individual



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 11 2009

John A. Clarke, Clerk

BY _____ DEPUTY

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.<br><br>A letter or phone call will not protect you your typewritten response must be in proper legal form if you want the court to hear your case.<br><br>If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.<br><br>There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book) | *Despues de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.*<br><br>*Una carta o una llamada telefonica no le ofrecerá protección; su respuesta escrita a maquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.*<br><br>*Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.*<br><br>*Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is *(El nombre y dirección de la corte es)*:

6230 Sylmar Ave
Van Nuys, CA 91401

CASE NUMBER *(Numero del Caso)*
LC085378

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de telefono del abogado del demandante, o del demandante que no tiene abogado, es)*

Brian Glicker, GLICKER & ASSOCIATES, PLC
12945 Ventura Blvd., Suite 220, Sherman Oaks, CA 91403 (818) 788-8886

| DATE<br>Fecha | JOHN A. CLARKE   AUG 1 1 2009 | Clerk, by,<br>*(Actuario)* |  H. Marquez | Deputy<br>*(Delegado)* |
|---|---|---|---|---|

**NOTICE TO THE PERSON SERVED:** You are served

1. ____ as an individual defendant
2. ____ as the person sued under the fictitious name of *(specify)*:

3. ____ on behalf of *(specify)*:

under: ____ CCP 416.10 (corporation)
       ____ CCP 416.20 (defunct corporation)
       ____ CCP 416.40 (association or partnership)
       ____ other:

       ____ CCP 416.60 (minor)
       ____ CCP 416.70 (conservatee)
       ____ CCP 416.90 (individual)

4. ____ by personal delivery on *(date)*:

(See reverse for Proof of Service)
**SUMMONS**

WWW.LawCA.com

# PROOF OF SERVICE — SUMMONS
*(Use separate proof of service for each person served)*

1. I served the
   a. _____ summons [ ] _____ complaint [ ] _____ amended summons [ ] _____ amended complaint
   _____ completed and blank Case Questionnaires    _____ Other (specify)
   b. on defendant (name)

   _____ c) serving [ ] defendant [ ] other (name and title or relationship to person served)

   d _____ by delivery [ ] at home [ ] at business
      (1) date
      (2) time
      3. address

   e _____ by mailing
      1 date
      (2 place

2. Manner of service (check proper box)
   a. _____ **Personal service.** By personally delivering copies (CCP 415 10)
   b. _____ **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving during usual office hours copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left (CCP 415 20(a))
   c. _____ **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left (CCP 415 20(b)) *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*
   d. _____ **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender (CCP 415 30) *(Attach completed acknowledgment of receipt.)*
   e. _____ **Certified or registered mail serivce** B. mailing to an address outside California (by first-class mail postage prepaid requiring a return recei t) copies to the person served (CCP 415 40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*
   f. _____ Other (specify code section)
      _____ additional page is attached
3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412 30, 415 10 and 474)
   a. _____ as an individual defendant
   b. _____ as the person sued under the fictitious name of (specify)
   c. _____ on behalf of (specify)
      under [ ] CCP 416 10 (corporation)    [ ] CCP 416 60 (minor)    [ ] other
            [ ] CCP 416 20 (defunct corporation)    [ ] CCP 416 70 (conservatee)
            [ ] CCP 416 40 (association or partnership)    [ ] CCP 416 90 (individual)
   d. _____ by personal delivery on (date)
4. At the time of service I was at least 18 years of age and not a party to this action
5. Fee for service $
6. Person serving
   a. _____ California sheriff, marshal, or constable
   b. _____ Registered California process server    f  Name, address and telephone number and, if applicable, county of registration and number
   c. _____ Employee or independent contractor of a registered California process server
   d. _____ Not a registered California process server
   e. _____ Exempt from registration under Bus & Prof Code 22350 b

I declare under penalty of perjury under the laws of the    *(For California sheriff, marshal, or constable use only)*
State of California that the foregoing is true and correct    I certify that the foregoing is true and correct

Date _____    Date _____

▶ _____    ▶ _____
            (SIGNATURE)                                        (SIGNATURE)

BRIAN I. GLICKER (SBN 165866)
GLICKER & ASSOCIATES
A Professional Law Corporation
14945 Ventura Blvd., Suite 220
Sherman Oaks, California 91403
Telephone: (818) 788-8886
Fax: (818) 788-8098

Attorneys for CARLOS ACEVEDO



## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

CARLOS ACEVEDO, an Individual

        Plaintiff,

    vs.

JORGE ROMERO INVESTMENTS, INC., A

California Corporation; GLOBAL CAPITAL

INVESTMENTS, INC., A Business of

Unknown Provenance; JORGE ROMERO, An

Individual; JORGE ROMERO II, An

Individual; ALEJANDRO SOTO, an

individual and DOES 1-25, Inclusive,

        Defendants.

Case No.: LC 085378

**FIRST AMENDED COMPLAINT FOR
CAUSES OF ACTION:**

  1.  **BREACH OF CONTRACT;**
  2.  **FRAUD**

Plaintiff CARLOS ACEVEDO, by and through his attorney of record, alleges as follows:

    1.     Plaintiff CARLOS ACEVEDO (hereinafter "ACEVEDO" is an individual

residing      in the County of Los Angeles, State of California.

2. Defendant JORGE ROMERO INVESTMENTS, INC. (hereinafter "JRIC" is a California Corporation doing business in the County of Los Angeles, State of California.

3. Defendant JORGE ROMERO INVESTMENTS, INC. (hereinafter "JRI" is a California Corporation doing business in the County of Los Angeles, State of California.

4. Defendant GLOBAL CAPITAL INVESTMENTS, INC. (hereinafter "GCI") is a business of unknown provenance doing business in the County of Los Angeles, State of California

5. Defendant JORGE ROMERO (hereinafter "ROMERO") is an individual residing in the County of Los Angeles, State of California.

6. Defendant JORGE ROMERO II (hereinafter "ROMERO II") is an individual residing in the County of Los Angeles, State of California

7. Defendant ALEJANDRO SOTO (hereinafter "SOTO") is an individual residing in the County of Los Angeles, State of California.

8. The true names and capacities, whether individual, corporate, associate, or otherwise of DOES 1-25 inclusive are unknown to Plaintiff at this time who therefore sues said DOE defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges that each of the DOE Defendants designated herein are fictitiously named defendants, and in some manner responsible for the events and happenings herein referred to, either contractually or tortiously, and caused the damage to Plaintiff as herein alleged and Plaintiff will amend his Complaint to allege such true names and capacities when same are ascertained.

9        Plaintiff is informed and believes, and thereon alleges that, at all times herein
mentioned, DOES 1 through 25, inclusive, and each of them, were agents of Defendants,
and each of them, were agents of Defendants, and of each other, and were at all times
herein mentioned, acting within the course and scope of such agency.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL
## CLAIMS FOR RELIEF

10.      SOTO is a recruiter for JRI. ACEVEDO was introduced to JRI, by and through,
SOTO who befriended ACEVEDO for the sole purpose of obtaining ACEVEDO's
investment into JRI. SOTO had also recruited other investors by making material
misrepresentations about SOTO and his investment. SOTO misrepresented to investors
that ACEVEDO had made so much money from the investment that he purchased a
home with the money he gained from the investment.

11.      On August 1, 2007 ACEVEDO and JRI, by and through its President and
Director, JORGE ROMERO and SOTO, respectively, entered into a written Agreement
(hereinafter "AGREEMENT") whereby ACEVEDO invested Twenty Thousand Dollars
($20,000.00) with JRI. Pursuant to that AGREEMENT, JRI agreed to pay a twenty
percent (20%) per month return. The investment was for a three month period ending
November 1, 2007.

12.      On March 1, 2008 ACEVEDO and GCI, by and through its President,
ROMERO, entered into a written Agreement (hereinafter "AGREEMENT 2") whereby
ACEVEDO invested One hundred ten thousand Dollars ($110,000.00) with GCI.
Pursuant to that AGREEMENT 2, JRI agreed to pay an eight point three percent

(8.33%) per month return. The investment was for a three month period ending July 1, 2008.

13.    ACEVEDO fulfilled all of his duties under both AGREEMENTs.

14.    JRI, GCI, ROMERO and ROMERO II refused, and continue to refuse, to perform their duties under the AGREEMENTs despite demands for payment being made by ACEVEDO.

### FIRST CAUSE OF ACTION

#### (Breach of Contract Against All Defendants)

15.    Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 14 as if fully set forth herein.

16.    Effective August 1, 2007 ACEVEDO entered into an AGREEMENT with JRI by and through ROMERO and SOTO, whereby ACEVEDO invested twenty thousand dollars ($20,000.00) with JRI, ROMERO and SOTO.  JRI, ROMERO and SOTO were to pay ACEVEDO a principal and a return on the investment pursuant to the AGREEMENT.

17.    ACEVEDO performed all of his duties under the AGREEMENT.

18.    JRI, ROMERO and SOTO refused, and continue to refuse, to pay ACEVEDO pursuant to the AGREEMENT, or on any other terms, in direct breach of the AGREEMENT.

19.    Pursuant to the AGREEMENT, JRI, ROMERO and SOTO agreed to pay ACEVEDO twenty percent (20%) monthly return on the investment with principal being due on November 1, 2007. No payments of any type were paid by JRI, ROMERO

or SOTO to ACEVEDO. This is in direct breach of the terms of the AGREEMENT. ACEVEDO has demanded payment and has been refused.

20.    JRI, ROMERO and SOTO breached the AGREEMENT by refusing to pay the monies owed to ACEVEDO.

21.    As a result of that breach, ACEVEDO has been damaged in an amount according to proof at trial, but believed to be in excess of fifty thousand dollars ($50,000.00.)

22.    Effective March 1, 2008 ACEVEDO entered into an AGREEMENT with GCI by and through ROMERO II, whereby ACEVEDO invested one hundred ten thousand dollars ($110,000.00) with GCI and ROMERO II and GCI and ROMERO II were to pay ACEVEDO principal and a return on the investment pursuant to the AGREEMENT.

23.    ACEVEDO performed all of his duties under the AGREEMENT.

24.    GCI and ROMERO II refused, and continue to refuse, to pay ACEVEDO pursuant to the AGREEMENT, or on any other terms, in direct breach of the AGREEMENT.

25.    Pursuant to the AGREEMENT JRI and ROMERO agreed to pay ACEVEDO eight point three three percent (8.33%) monthly return on the investment with principal being due on July 1, 2008. No payments of any type were paid by GCI or ROMERO II to ACEVEDO. This is in direct breach of the terms of the AGREEMENT. ACEVEDO has demanded payment and has been refused.

26.    GCI, ROMERO II and SOTO breached the AGREEMENT by refusing to pay the monies owed to ACEVEDO.

27. As a result of that breach, ACEVEDO has been damaged in an amount according to proof at trial, but believed to be in excess of two hundred thousand dollars ($200,000.00.)

## SECOND CAUSE OF ACTION

### (Fraud Against All Defendants)

28. Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 9, and 15 through 27 as if fully set forth herein.

29. On or about July 22nd, 2007, ROMERO and SOTO, on their own behalf and on behalf of JRI induced ACEVEDO into investing with them based on the representation that they had specific knowledge of outstanding opportunities for a guaranteed high rate of return on ACEVEDOs money. This misrepresentation was of a material fact and was essential to the analysis by ACEVEDO of whether to enter into the AGREEMENT. If ACEVEDO had known the truth, as opposed to the misrepresentations by ROMERO and SOTO, he would not have entered into the AGREEMENT.

30. On February 23, 2008 ROMERO II, on his own behalf and on behalf of GCI induced ACEVEDO into investing with him based on the representation that he had specific knowledge of outstanding opportunities for a guaranteed high rate of return on ACEVEDOs money. This misrepresentation was of a material fact and was essential to the analysis by ACEVEDO of whether to enter into the AGREEMENT. If ACEVEDO had known the truth, as opposed to the misrepresentations by ROMERO II, he would not have entered into the AGREEMENT.

31    Defendants gave the false information to ACEVEDO in efforts to induce ACEVEDO into entering into the AGREEMENT and investing his money with them. At the time Defendants gave these guarantees they knew that they were false and never intended to pay ACEVEDO the promised returns. The knowingly false statements were solely intended to induce ACEVEDO to enter into the AGREEMENTS

32.    ACEVEDO justifiably relied on the representations of Defendants in entering into the AGREEMENT in that Defendants were in a position of knowledge as investment advisors.

33    As a direct result of ACEVEDO's reliance on the false statements made by Defendants, ACEVEDO signed the AGREEMENTS and gave the money to defendants

34.    Defendants refused, and continue to refuse, to pay the returns promised to ACEVEDO under the AGREEMENTS, or any money at all to which ACEVEDO is entitled. As a result of that refusal ACEVEDO has been damaged in an amount according to proof but in excess of two hundred and fifty thousand dollars ($250,000.00.)

35.    The knowingly false statements of ROMERO, ROMERO II and SOTO were intended to cause injury to ACEVEDO and were, therefore made with malice entitling ACEVEDO to punitive damages.

36.    The knowingly false statements made by ROMERO, ROMERO II and SOTO were concealments of material facts known to Defendants with the intention of depriving ACEVEDO or property rights and legal rights, thereby entitling ACEVEDO to punitive damages

## PRAYER FOR RELIEF

Wherefore, Plaintiff CARLOS ACEVEDO prays for relief against Defendants,

and each of them as follows:

As to the First Cause of Action

1. For an award of general and special damages against Defendants, and each of them,

    with interest at the legal rate from the date of Defendants breach of the contract;

2. For attorney's fees pursuant to the written contract;

3. For costs of suit herein; and

4. For such other and further relief as this court deems just and proper.

As to the Second Cause of Action

1. For an award of general and special damages against Defendants, and each of them;

2. For attorney's fees pursuant to the written contract

3. For pre-judgment interest;

4. for punitive or exemplary damages in an amount to be established at trial; and

5. For such other and further relief as the Court deems just and proper.


Dated: July 20, 2009                    GLICKER & ASSOCIATES


                                        By: _____
                                        Brian Glicker, attorneys for Plaintiff CARLOS
                                        ACEVEDO

91335

A6009

BRIAN L. GLICKER (SBN 165866)
GLICKER & ASSOCIATES
A Professional Law Corporation
14945 Ventura Blvd., Suite 220
Sherman Oaks, California 91403
Telephone: (818) 788-8886
Fax: (818) 788-8098

Attorneys for CARLOS ACAVEDO



FILED
LOS ANGELES SUPERIOR COURT

MAY 05 2009

John A. Clarke, Clerk

BY _____ DEPUTY

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

CARLOS ACAVEDO, an Individual

      Plaintiff,

    vs

JORGE ROMERO INVESTMENTS, INC., A
California Corporation; GLOBAL CAPITAL
INVESTMENTS, INC., A Business of
Unknown Provenance; JORGE ROMERO, An
Individual, JORGE ROMERO II, An
Individual; DOES 1-25, Inclusive,

      Defendants.

Case No.: **LC085378**

**COMPLAINT FOR CAUSES OF
ACTION:**

  **1. BREACH OF CONTRACT;
  2. FRAUD**

Plaintiff CARLOS ACAVEDO, by and through his attorney of record, alleges as follows:

    1.    Plaintiff CARLOS ACAVEDO (hereinafter "ACAVEDO" is an individual residing    in the County of Los Angeles, State of California.

    2.    Defendant JORGE ROMERO INVESTMENTS, INC. (hereinafter "JRIC" is a California Corporation doing business in the County of Los Angeles, State of California.

**PAID**

3.      Defendant JORGE ROMERO INVESTMENTS. INC. (hereinafter "JRI" is a California Corporation doing business in the County of Los Angeles. State of California

4.      Defendant GLOBAL CAPITAL INVESTMENTS. INC. (hereinafter "GCI" is a business of unknown provenance doing business in the County of Los Angeles. State of California.

5       Defendant JORGE ROMERO (hereinafter "ROMERO") is an individual residing in the County of Los Angeles. State of California.

6.      Defendant JORGE ROMERO II (hereinafter "ROMERO II") is an individual residing in the County of Los Angeles. State of California.

7       The true names and capacities. whether individual. corporate. associate. or otherwise of DOES 1-25 inclusive are unknown to Plaintiff at this time who therefore sues said DOE defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges that each of the DOE Defendants designated herein are fictitiously named defendants, and in some manner responsible for the events and happenings herein referred to, either contractually or tortiously. and caused the damage to Plaintiff as herein alleged and Plaintiff will amend his Complaint to allege such true names and capacities when same are ascertained.

5.      Plaintiff is informed and believes. and thereon alleges that. at all times herein mentioned. DOES 1 through 25, inclusive, and each of them, were agents of Defendants, and each of them, were agents of Defendants, and of each other. and were at all times herein mentioned. acting within the course and scope of such agency.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL

## CLAIMS FOR RELIEF

6.    On August 1, 2007 ACAVEDO and JRI, by and through its President, JORGE
ROMERO, entered into a written Agreement (hereinafter "AGREEMENT") whereby
ACAVEDO invested Twenty Thousand Dollars ($20,000.00) with JRI. Pursuant to that
AGREEMENT, JRI agreed to pay a twenty percent (20%) per month return. The
investment was for a three month period ending November 1, 2007.

7.    On March 1, 2008 ACAVEDO and GCI, by and through its President,
ROMERO II, entered into a written Agreement (hereinafter "AGREEMENT 2")
whereby ACAVEDO invested One hundred ten thousand Dollars ($110,000.00) with
GCI. Pursuant to that AGREEMENT 2, JRI agreed to pay a eight point three three
percent (8.33%) per month return. The investment was for a three month period ending
July 1, 2008.

8.    ACAVEDO fulfilled all of his duties under both AGREEMENTs.

9    JRI, GCI, ROMERO and ROMERO II refused, and continue to refuse, to
perform their duties under the AGREEMENTs despite demands for payment being
made by ACAVEDO.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

10.    Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1
through 9 as if fully set forth herein.

11.    Effective August 1, 2007 ACAVEDO entered into an AGREEMENT with JRI
by and through ROMERO, whereby ACAVEDO invested twenty thousand dollars

($20,000.00) with JRI and ROMERO and JRI and ROMERO were to pay ACAVEDO

principal and a return on the investment pursuant to the AGREEMENT.

12.    ACAVEDO performed all of his duties under the AGREEMENT.

13.    JRi and ROMERO refused, and continue to refuse, to pay ACAVEDO pursuant

to the AGREEMENT, or on any other terms, in direct breach of the AGREEMENT.

14.    Pursuant to the AGREEMENT JRI and ROMERO agreed to pay ACAVEDO

twenty percent (20%) monthly return on the investment with principal being due on

November 1, 2007. No payments of any type were paid by JRI or ROMERO to

ACAVEDO. This is in direct breach of the terms of the AGREEMENT. ACAVEDO has

demanded payment and has been refused.

15.    JRI and ROMERO breached the AGREEMENT by refusing to pay the monies

owed to ACAVEDO.

16    As a result of that breach, ACAVEDO has been damaged in an amount

according to proof at trial, but believed to be in excess of fifty thousand dollars

($50,000.00.)

17.    Effective March 1, 2008 ACAVEDO entered into an AGREEMENT with GCI

by and through ROMERO II, whereby ACAVLDO invested one hundred ten thousand

dollars ($110,000.00) with GCI and ROMERO II and GCI and ROMERO II were to pay

ACAVEDO principal and a return on the investment pursuant to the AGREEMENT.

18.    ACAVEDO performed all of his duties under the AGREEMENT.

19.    GCI and ROMERO II refused, and continue to refuse, to pay ACAVEDO

pursuant to the AGREEMENT, or on any other terms, in direct breach of the

AGREEMENT.

20.     Pursuant to the AGREEMENT JRI and ROMERO agreed to pay ACAVEDO eight point three three percent (8.33%) monthly return on the investment with principal being due on July 1, 2008. No payments of any type were paid by GCI or ROMERO II to ACAVEDO. This is in direct breach of the terms of the AGREEMENT. ACAVEDO has demanded payment and has been refused.

21     GCI and ROMERO II breached the AGREEMENT by refusing to pay the monies owed to ACAVEDO.

22.     As a result of that breach, ACAVEDO has been damaged in an amount according to proof at trial, but believed to be in excess of two hundred thousand dollars ($200,000.00.)

## SECOND CAUSE OF ACTION

### (Fraud Against All Defendants)

23     Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1 through 9, and 11 through 22 as if fully set forth herein.

24.     On or about July 22nd, 2007, ROMERO, on his own behalf and on behalf of JRI induced ACAVEDO into investing with him based on the representation that he had specific knowledge of outstanding opportunities for a guaranteed high rate of return on ACAVEDOs money. This misrepresentation was of a material fact and was essential to the analysis by ACAVEDO of whether to enter into the AGREEMENT. If ACAVEDO had known the truth, as opposed to the misrepresentations by ROMERO, he would not have entered into the AGREEMENT.

25.    On February 23, 2008 ROMERO II, on his own behalf and on behalf of GCI induced ACAVEDO into investing with him based on the representation that he had specific knowledge of outstanding opportunities for a guaranteed high rate of return on ACAVEDOs money. This misrepresentation was of a material fact and was essential to the analysis by ACAVEDO of whether to enter into the AGREEMENT. If ACAVEDO had known the truth, as opposed to the misrepresentations by ROMERO II, he would not have entered into the AGREEMENT.

26.    Defendants gave the false information to ACAVEDO wrote in efforts to induce ACAVEDO into entering into the AGREEMENT and investing his money with them. At the time Defendants gave these guarantees they knew that they were false and never intended to pay ACAVEDO the promised returns. The knowingly false statements were solely intended to induce ACAVEDO to enter into the AGREEMENTS

27.    ACAVEDO justifiably relied on the representations of Defendants in entering into the AGREEMENT in that Defendants were in a position of knowledge as investment advisors.

28.    As a direct result of ACAVEDO's reliance on the false statements made by Defendants, ACAVEDO signed the AGREEMENTS and gave the money to defendants.

29.    Defendants refused, and continue to refuse, to pay the returns promised to ACAVEDO under the AGREEMENTS , or any money at all to which ACAVEDO is entitled. As a result of that refusal ACAVEDO has been damaged in an amount according to proof but in excess of two hundred and fifty thousand dollars ($250,000.00 )

30   The knowingly false statements of ROMERO and ROMERO II were intended to cause injury to ACAVEDO and were, therefore made with malice entitling ACAVEDO to punitive damages.

31   The knowingly false statements made by ROMERO and ROMERO II were concealments of material facts known to Defendants with the intention of depriving ACAVEDO or property rights and legal rights, thereby entitling ACAVEDO to punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff CARLOS ACAVEDO prays for relief against Defendants, and each of them as follows:

As to the First Cause of Action

1. For an award of general and special damages against Defendants, and each of them, with interest at the legal rate from the date of Defendants breach of the contract;

2. For attorney's fees pursuant to the written contract;

3. For costs of suit herein; and

4. For such other and further relief as this court deems just and proper.

As to the Second Cause of Action

1.  For an award of general and special damages against Defendants, and each of them;

2.  for attorney's fees pursuant to the written contract

3.  for pre-judgment interest;

4.  for punitive or exemplary damages in an amount to be established at trial; and

5.  For such other and further relief as the Court deems just and proper.

Dated: April 24, 2009                    GLICKER & ASSOCIATES

                                         By
                                         Brian Glicker, attorneys for Plaintiff CARLOS
                                         ACAVEDO

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

[illegible defendant names]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le esta demandando)*

[illegible]



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
LOS ANGELES SUPERIOR

MAY 0 5 2009

JOHN A. CLARKE, Clk.

BY H. [illegible], DEPUTY

---

You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.

A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.

If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.

Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a maquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.

Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.

Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefonico).

---

The name and address of the court is: *(El nombre y dirección de la corte es)*
[illegible address]

**CASE NUMBER:** LC085378

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el numero de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
[illegible]
WOODWARD & ASSOCIATES, P.C.
[illegible] West [illegible] Road, Suite 10
Sherman Oaks, CA 91423
[illegible]

| | | | | |
|---|---|---|---|---|
| DATE *(Fecha)* | JOHN A. CLARKE  MAY 0 5 2009  John A. Clarke, Clerk, by _____ *(Actuario)* | | H. Marquez , Deputy *(Delegado)* |

---

**NOTICE TO THE PERSON SERVED:** You are served
1. as an individual defendant
2. as the person sued under the fictitious name of *(specify)*
3. on behalf of *(specify)*

under
- CCP 416.10 (corporation)
- CCP 416.20 (defunct corporation)
- CCP 416.40 (association or partnership)
- other

- CCP 416.60 (minor)
- CCP 416.70 (conservatee)
- CCP 416.90 (individual)

4. by personal delivery on *(date)*

*(See reverse for Proof of Service)*

**SUMMONS**

*(Use separate proof of service for each person served)*

1  I served the

   a.    summons    complaint    amended summons       amended complaint

       completed and blank Case Questionnaires       Other *(specify)*

   b.  on defendant *(name)*

   c.  by serving        defendant       other *(name and title or relationship to person served)*

   d.    by delivery    at home    at business

        (1) date

        (2) time

        (3) address

   e.    by mailing

        (1) date

        (2) place

2  Manner of service *(check proper box)*

   a.    **Personal service.** By personally delivering copies. (CCP 415.10)

   b.    **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))

   c.    **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b)) *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*

   d.    **Mail and acknowledgement service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgement and a return envelope, postage prepaid, addressed to the sender. (CCP 415.30) *(Attach completed acknowledgment of receipt.)*

   e.    **Certified or registered mail service.** By mailing to an address outside California by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*

   f.    Other *(specify code section)*

        additional page is attached

3  The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10 and 474)

   a.    as an individual defendant

   b.    as the person sued under the fictitious name of *(specify)*

   c.    on behalf of *(specify)*

        under    CCP 416.10 (corporation)               CCP 416.60 (minor)       other

               CCP 416.20 (defunct corporation)        CCP 416.70 (conservatee)

               CCP 416.40 (association or partnership)    CCP 416.90 (individual)

   d.    by personal delivery on *(date)*

4  At the time of service I was at least 18 years of age and not a party to this action

5  Fee for service  $

6  Person serving

   a.    California sheriff, marshal, or constable.

   b.    Registered California process server

   c.    Employee or independent contractor of a registered California process server

   d.    Not a registered California process server

   e.    Exempt from registration under Bus. & Prof. Code 22350(b)

   f.    Name, address and telephone number and, if applicable, county of registration and number.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____

*(For California sheriff, marshal, or constable use only)*

I certify that the foregoing is true and correct.

Date:

▶

_____

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | |
|---|---|
| DATE 08/23/10 | **DEPT. NWY** |
| HONORABLE RICHARD ADLER                    JUDGE | JENNIFER GARCIA          **DEPUTY CLERK** |
| HONORABLE  14          P. ARANDA, C.A.        JUDGE PRO TEM | **ELECTRONIC RECORDING MONITOR** |
| Deputy Sheriff | N. MURRY, CSR #10739        Reporter |

| | | |
|---|---|---|
| 9:00 am | LC085378 | Plaintiff Counsel     BRIAN I. GLICKER          (X) |
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | Defendant Counsel     JORGE ROMERO          (X)                 [IN PRO PER] |
| | TMO GIVEN 3/22/10 | |

NATURE OF PROCEEDINGS:

TRIAL

The Court Trial is called for hearing with Counsel, the Plaintiff, and the Defendant present as heretofore.

The Defendant provides the Court and Plaintiff's Counsel with a copy of the Defendant's exhibit notebook in open court this date.

The Court reminds the Defendant that the parties were to submit their exhibit notebooks to the court on or before August 5, 2010, by 4:30p.m.

The Court hears oral argument from Plaintiff's Counsel and the Defendant regarding the matter as fully reflected in the official notes of the court reporter.

Plaintiff's Counsel makes opening statements.

The Defendant makes opening statements.

The Plaintiff, Carlos Acevedo, is sworn and testifies on his own behalf.

The Plaintiff's exhibit 8 [Three Month Investment Program for $20,000, (two pages)], 3 [Check number 1060, (one page)], 13 [Jorge Romero Investments,

Page   1 of  9    DEPT. NWY

**MINUTES ENTERED 08/23/10 COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE 08/23/10 | | | | DEPT. NWY |
|---|---|---|---|---|
| HONORABLE RICHARD ADLER | JUDGE | JENNIFER GARCIA | | DEPUTY CLERK |
| HONORABLE 14   P. ARANDA, C.A. | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| | Deputy Sheriff | N. MURRY, CSR #10739 | | Reporter |

| 9:00 am | LC085378 | Plaintiff Counsel | BRIAN I. GLICKER | (X) |
|---|---|---|---|---|
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | Defendant Counsel | JORGE ROMERO [IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | | |

NATURE OF PROCEEDINGS:

Inc., three Month Representation Letter, (one page)], 4 [Check number 1071, (one page)], 5 [Check number 1075, (one page)], 6 [Check number 1120, (one page)], 10 [Global Capital Investments, Inc., four Month Representation Letter, (one page)], 11 [Four Month Investment Program for $110,000, (two pages)], 12 [Global Capital Investments six Month Representation Letter, (one page)], 2 [March 15, 2008, Letter from Global Capital Investment Written in Spanish, (one page)], 1 [September 30, 2008, Letter from Global Capital Investment to Investors, (one page)], 16 [May 30, 2008, Letter from Global Capital Investments, Inc., to Jorge Romero II in Spanish, (one page)], 17 [September 30, 2008, Letter to Carlos Acevedo from Jorge Romero II, (one page)], 14 [Letter to Jorge Romero from Carlos Acevedo, (one page)], are marked for identification only.

The Plaintiff rest.

The Defendant rest.

The Defendant, Jorge Romero, is sworn and testifies for the Plaintiff.

The Plaintiff rest.

The Defendant's exhibit 8 [Investment made for Jorge Romero Investments, Inc., to Maximum Return Investments, Inc., Copy of Check Number 1336 for

Page  2 of  9   DEPT. NWY

MINUTES ENTERED
08/23/10
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE 08/23/10 | | **DEPT.** NWY |
| HONORABLE RICHARD ADLER   JUDGE | JENNIFER GARCIA | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| 14      P. ARANDA, C.A.   Deputy Sheriff | N. MURRY, CSR #10739 | Reporter |

| | | | |
|---|---|---|---|
| 9:00 am | LC085378 | Plaintiff Counsel     BRIAN I. GLICKER | (X) |
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | Defendant Counsel     JORGE ROMERO [IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | |

**NATURE OF PROCEEDINGS:**

$150,000.00, on September 21, 2007, Promissory Note, Vice President's Business Card and E-mail dated November 16, 2007, (four pages)], is marked for identification only.

The Defendant rest.

The Plaintiff rest the case.

The Defendant rest the case.

Plaintiff's Counsel makes closing arguments.

The Plaintiff's exhibit 8 [Three Month Investment Program for $20,000, (two pages)], 3 [Check number 1060, (one page)], 13 [Jorge Romero Investments, Inc., three Month Representation Letter, (one page)], 4 [Check number 1071, (one page)], 5 [Check number 1075, (one page)], 6 [Check number 1120, (one page)], 10 [Global Capital Investments, Inc., four Month Representation Letter, (one page)], 11 [Four Month Investment Program for $110,000, (two pages)], 12 [Global Capital Investments six Month Representation Letter, (one page)], 2 [March 15, 2008, Letter from Global Capital Investment Written in Spanish, (one page)], 1 [September 30, 2008, Letter from Global Capital Investment to Investors, (one page)], 16 [May 30, 2008, Letter from Global Capital Investments, Inc., to Jorge Romero II in Spanish, (one page)], 15 [Six Month Investment

Page   3 of   9   DEPT. NWY

| |
|---|
| MINUTES ENTERED 08/23/10 COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | | | DEPT. NWY |
|---|---|---|---|---|
| DATE: 08/23/10 | | | | |
| HONORABLE RICHARD ADLER | JUDGE | JENNIFER GARCIA | DEPUTY CLERK | |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR | |
| 14        P. ARANDA, C.A. | Deputy Sheriff | N. MURRY, CSR #10739 | Reporter | |

| 9:00 am | LC085378 | Plaintiff Counsel | BRIAN I. GLICKER | (X) |
|---|---|---|---|---|
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | Defendant Counsel | JORGE ROMERO [IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | | |

NATURE OF PROCEEDINGS:

Program for $110,000, Start Date March 1, 2008, (one page)], 14 [Letter to Jorge Romero from Carlos Acevedo, (one page)], are admitted in evidence.

Defendant makes closing arguments.

The Court takes the matter under submission.

Later, after having taken the Court Trial under submission, the Court rules as follows:

### Tentative Decision

Plaintiff filed his First Amended Complaint ("FAC") against Defendant Jorge Romero Investments, Inc., Global Capital Investments, Inc., Jorge Romero, Jorge Romero II, and Alejandro Soto ("Soto"). Only Jorge Romero answered. Although Plaintiff served Defendants Soto and Global Capital Investments (by publication), Plaintiff never took the defaults of these defendants.  The FAC alleges (1) Breach of Promissory Note, and (2) Fraud.

The Court finds as follows with respect to the Complaint (hereinafter "Complaint"):

Paragraph 1:    True
Paragraph 2:    True
Paragraph 3:    True
Paragraphs 4-7: True

MINUTES ENTERED
08/23/10
COUNTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE 08/23/10 | | DEPT. NWY |
|---|---|---|
| HONORABLE RICHARD ADLER | JUDGE | JENNIFER GARCIA   DEPUTY CLERK |
| HONORABLE 14   P. ARANDA, C.A. | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| | Deputy Sheriff | N. MURRY, CSR #10739   Reporter |

| 9:00 am | LC085378 | Plaintiff Counsel | BRIAN I. GLICKER | (X) |
|---|---|---|---|---|
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | Defendant Counsel | JORGE ROMERO [IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | | |

NATURE OF PROCEEDINGS:

Paragraph 8: The court finds insufficient evidence to
            establish that Defendant Jorge Romero
            Investments, Inc or Global Capital
            Investments, Inc are corporations in good
            standing or ever were corporations in
            good standing. Further, the Court finds
            that these alleged corporations are the
            alter ego of Defendant Jorge Romero.
            Associated Vendors v. Oakland Meat Co.
            (1962) 210 Cal.App.2d 825, 836-840.

Paragraph 9: No findings

Background:
Paragraph 10-14: True

First Cause of Action: Breach of Written Contract

Paragraph 15:       No findings
Paragraphs 16:      True as to Defendant Romero. Not true
                    as to Soto.
Paragraph: 17:      True
Paragraph: 18:      True as to Defendant Romero. Not true
                    as to Soto
Paragraph 19-20:    True as to Defendant Romero. Not
                    true as to Soto
Paragraph 21:       True
Paragraph 22-5:     True
Paragraph 26:       True as to Defendant Romero. Not true
                    as to Soto

Page   5 of  9   DEPT. NWY

MINUTES ENTERED
08/23/10
COUNTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | | |
|---|---|---|
| DATE 06/23/10 | | **DEPT. NWY** |
| HONORABLE RICHARD ADLER   JUDGE | JENNIFER GARCIA | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM<br>14        P. ARANDA, C.A. | | ELECTRONIC RECORDING MONITOR |
| Deputy Sheriff | N. MURRY, CSR #10739 | Reporter |

| | | | |
|---|---|---|---|
| 9:00 am | LC085378 | Plaintiff<br>Counsel   BRIAN I. GLICKER | (X) |
| | CARLOS ACEVEDO<br>VS<br>JORGE ROMERO INVESTMENTS INC.,<br>AL. | Defendant<br>Counsel   JORGE ROMERO<br>[IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | |

NATURE OF PROCEEDINGS:

Paragraph 27:   True, except the amount is found to
                be $110,000.00

Second Cause of Action: Fraud

Paragraph 28: No findings
              Paragraph 29-36: True, except that
              Defendant Jorge Romero is the only
              person who made the misrepresentations.
              The Court finds that Defendant Romero
              solicited Plaintiff to make cash
              investments totaling $50,000 on the
              false promise Defendant was investing
              investing in legitimate businesses.
              Initially Defendant promised to purchase
              gold from an African gold mine and
              thereafter sell the gold in Europe.
              Later, Defendant represented that
              Plaintiff 's money was invested in a
              project in Venezuela and/or fast boats
              in Florida.  Plaintiff was never given
              any monthly or annual statements showing
              showing where his funds had been
              invested.  Plaintiff never received any
              return on his money and never received
              his money back.  Defendant was unable to
              present any documentary evidence that he
              had actually invested Plaintiff's money
              in any actual investment.  Defendant
              attended his deposition and subpoenaed

                    Page   6 of  9   DEPT. NWY

| |
|---|
| **MINUTES ENTERED**<br>06/23/10<br>**COUNTY CLERK** |

SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES

| DATE: 08/23/10 | | | DEPT. NWY |
|---|---|---|---|
| HONORABLE RICHARD ADLER | JUDGE | JENNIFER GARCIA | DEPUTY CLERK |
| HONORABLE 14    P. ARANDA, C.A. | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| | Deputy Sheriff | N. MURRY, CSR #10739 | Reporter |

9:00 am LC085378

CARLOS ACEVEDO
VS
JORGE ROMERO INVESTMENTS INC., ET AL.

TMO GIVEN 3/22/10

Plaintiff
Counsel    BRIAN I. GLICKER    (X)

Defendant
Counsel    JORGE ROMERO    (X)
[IN PRO PER]

NATURE OF PROCEEDINGS:

to produce all his investment records, but Defendant attended his deposition without producing any documents whatsoever.

Defendant had no business licenses and operated out of his house. Defendant testified he had solicited up to two million from investors, but personally did no due diligence on the alleged investments he claims to have made. Defendant claims to have visited a gold mine in Africa, but offered no documentary evidence of such a visit. The Court finds even if this visit occurred, defendant failed to establish that he performed any research into the financial stability or safety of any of the alleged investments. Further, Defendant claims to have invested $500,000 with a Ms. Flores, whom he met at an Alcoholics Anonymous meetin. Defendant went to Ms. Flores' home to the investments. Defendant knew she had no business or investment licenses. Defendant did no research or due diligence on Ms. Flores or any of the companies she allegedly invested in. Defendant claims to have lost all of the investment funds he held for his

Page    7 of  9    DEPT. NWY

MINUTES ENTERED
08/23/10
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES

| DATE: 08/23/10 | | | | | DEPT. NWY |
|---|---|---|---|---|---|
| HONORABLE RICHARD ADLER | | JUDGE | JENNIFER GARCIA | | DEPUTY CLERK |
| HONORABLE 14 | F. ARANDA, C.A. | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| | | Deputy Sheriff | N. MURRY, CSR #10739 | | Reporter |

| | | | | | |
|---|---|---|---|---|---|
| 9:00 am | LC085378 | | Plaintiff Counsel | BRIAN I. GLICKER | (X) |
| | CARLOS ACEVEDO VS JORGE ROMERO INVESTMENTS INC., AL. | | Defendant Counsel | JORGE ROMERO [IN PRO PER] | (X) |
| | TMO GIVEN 3/22/10 | | | | |

NATURE OF PROCEEDINGS:

investors.

The Court finds Plaintiff has not
adduced sufficient evidence to establish
punitive or exemplary damages.

Affirmative Defenses:
The court finds none of
Defendants pled affirmative
defenses have been established.

Court finds Judgment for Plaintiff against Defendant
Jorge Romero in the amount of $110,0000, together
with costs, and  attorney fees  according to proof,
together with interest from March 1, 2008 to present
at the rate of 10% per annum in the amount of
$27,273.00.

The Judicial Assistant is to give notice to
Plaintiff's Counsel and to the Defendant.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/ Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that this date
I served Notice of Entry of the above Minute Order
of August 23, 2010, upon each party or Counsel named
below by depositing in the United States mail at the

Page    8 of  9    DEPT. NWY

| MINUTES ENTERED |
|---|
| 08/23/10 |
| COUNTY CLERK |

SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES

DATE: 08/23/10

DEPT. NWY

HONORABLE RICHARD ADLER                    JUDGE

JENNIFER GARCIA        DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

14          P. ARANDA, C.A.

Deputy Sheriff    N. MURRY, CSR #10739        Reporter

9:00 am  LC085378

Plaintiff
Counsel        BRIAN I. GLICKER          (X)

CARLOS ACEVEDO
VS
JORGE ROMERO INVESTMENTS INC.,
AL.

Defendant
Counsel        JORGE ROMERO          (X)
              [IN PRO PER]

TMO GIVEN 3/22/10

NATURE OF PROCEEDINGS:

courthouse in Van Nuys, California, one copy of the
original entered herein in a separte sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: August 30, 2010

John A. Clarke, Executive Offices/Clerk

By:_____
          Jennifer B. Garcia

Brian I. Glicker
Attorney at Law
14945 Ventura Boulevard
Suite 220
Sherman Oaks, Ca. 91403

Jorge Romero
7235 Zelzah Avenue
Reseda, CA. 91335

MINUTES ENTERED
08/23/10
COUNTY CLERK

EXHIBIT "E"

**This page is part of your document - DO NOT DISCARD**



## 20111768095



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/28/11 AT 01:59PM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



LEADSHEET

201112280710016

00005161414

003712235

**SEQ:**
**01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E118003

WHEN RECORDED MAIL TO

NAME  Carlos R. Acevedo

MAILING
ADDRESS  13159 Vanowen St. #5

CITY, STATE
ZIP CODE  North Hollywood, CA 91605

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# TITLE(S)

## ABSTRACT OF JUDGMENT

R428 6/94

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State Bar number, and telephone number)*
Recording requested by and return to:

CARLOS ACEVEDO

13159 VANOWEN STREET #5
NORTH HOLLYWOOD, CA 91605

[ ] ATTORNEY FOR   [✓] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS  6230 SYLMAR AVENUE
MAILING ADDRESS  6230 SYLMAR AVENUE
CITY AND ZIP CODE  VAN NUYS, CA 91401
BRANCH NAME  NORTH WEST DISTRICT

PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al.

FOR RECORDER'S USE ONLY

CASE NUMBER:
LC085378

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**    [ ] Amended

FOR COURT USE ONLY

1. The [✓] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's

   Name and last known address
   ```
   JORGE ROMERO
   7235 ZELZAH AVENUE
   RESEDA, CA 91335
   ```

   b. Driver's license no. [last 4 digits] and state:        [✓] Unknown
   c. Social security no. [last 4 digits]:                    [✓] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):* JORGE ROMERO
      7235 ZELZAH AVENUE RESEDA, CA 91335

2. [ ] Information on additional judgment
      debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   CARLOS ACEVEDO
   13159 Vanowen st., #5 North hollywood, CA

   Date: August 31, 2011
   CARLOS ACEVEDO
   _____
   (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment
      creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
      a. Date:
      b. Instrument No.:

   ► _____
      (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 137,273.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date)* January 10, 2011
   b. Renewal entered on *(date):*

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
       is endorsed on the judgment as follows:
       a. Amount: $
       b. In favor of *(name and address):*

11. A stay of enforcement has
    a. [✓] not been ordered by the court.
    b. [ ] been ordered by the court effective until
          *(date):*

12. a. [✓] I certify that this is a true and correct abstract of
           the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

This abstract issued on *(date):*
OCT 2 8 2011

Clerk, by _____, Deputy
LUCY MORGA

[SEAL] SUPERIOR COURT LOS ANGELES COUNTY CALIFORNIA

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 1 of 2

Code of Civil Procedure, §§ 488.480, 674, 700.190

PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al.

CASE NUMBER:

LC085378

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor *(name and address)*:

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.    Name and last known address

Driver's license no. [last 4 digits]
and state:                                    ☑ Unknown

Social security no. [last 4 digits]:          ☑ Unknown

Summons was personally served at or mailed to *(address)*:

17.    Name and last known address

Driver's license no. [last 4 digits]
and state:                                    ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address)*:

18.    Name and last known address

Driver's license no. [last 4 digits]
and state:                                    ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.    Name and last known address

Driver's license no. [last 4 digits]
and state:                                    ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

EXHIBIT "F"

This page is part of your document - DO NOT DISCARD



**20120059522**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/12/12 AT 04:10PM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 30.00 |



LEADSHEET



201201120940031

00005234295



003742215

SEQ:
01

DAR - Counter (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

E220504

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and
telephone number):

Recording requested by and return to:

CARLOS ACEVEDO

13159 VANOWEN STREET #5
NORTH HOLLYWOOD, CA 91605

☐ ATTORNEY FOR   ☒ JUDGMENT CREDITOR   ☐ ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 SYLMAR AVENUE
MAILING ADDRESS: 6230 SYLMAR AVENUE
CITY AND ZIP CODE: VAN NUYS, CA 91401
BRANCH NAME: NORTH WEST DISTRICT

FOR RECORDER'S USE ONLY

PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al.

CASE NUMBER: LC085378

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS    ☒ Amended

FOR COURT USE ONLY

1. The ☒ judgment creditor ☐ assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's

Name and last known address

JORGE ROMERO
7235 ZELZAH AVENUE
RESEDA, CA 91335

b. Driver's license no. [last 4 digits] and state:        ☒ Unknown
c. Social security no. [last 4 digits]:                    ☒ Unknown
d. Summons or notice of entry of sister-state judgment was personally served or
mailed to (name and address): JORGE ROMERO
7235 ZELZAH AVENUE RESEDA, CA 91335

2. ☐ Information on additional judgment
debtors is shown on page 2.

3. Judgment creditor (name and address):

CARLOS ACEVEDO
13159 Vanowen St.,#5 N. Hollywood,CA
Date: December 29, 2011
CARLOS ACEVEDO

(TYPE OR PRINT NAME)

4. ☐ Information on additional judgment
creditors is shown on page 2.

5. ☐ Original abstract recorded in this county:
a. Date:
b. Instrument No.:

▶ _____
(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
$ 137,273.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on (date): January 10, 2011
b. Renewal entered on (date):

9. ☐ This judgment is an installment judgment.

10. ☐ An ☐ execution lien ☐ attachment lien
is endorsed on the judgment as follows:
a. Amount: $
b. In favor of (name and address):

11. A stay of enforcement has
a. ☒ not been ordered by the court.
b. ☐ been ordered by the court effective until
(date):

12. a. ☒ I certify that this is a true and correct abstract of
the judgment entered in this action.
b. ☐ A certified copy of the judgment is attached.

This abstract issued on (date):
JAN 1 1 2012

JOHN A. CLARKE

_____, Deputy
Lucy Morga

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Code of Civil Procedure, §§ 488.480,
674, 700.190

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF: CARLOS ACEVEDO | CASE NUMBER: |
|---|---|
| DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al. | LC085378 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*

JORGE ROMERO
14324 Killion St.
Sherman Oaks, CA 91401

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.          Name and last known address

Driver's license no. [last 4 digits] and state:          ☒ Unknown

Social security no. [last 4 digits]:          ☒ Unknown

Summons was personally served at or mailed to *(address):*

17.          Name and last known address

Driver's license no. [last 4 digits] and state:          ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.          Name and last known address

Driver's license no. [last 4 digits] and state:          ☐ Unknown

Social security no. ]last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address)*

19.          Name and last known address

Driver's license no. [last 4 digits] and state:          ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

EXHIBIT "G"

**This page is part of your document - DO NOT DISCARD**





## 20120306769

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/27/12 AT 03:28PM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 35.00 |



LEADSHEET



201202270940023

00005427484



003823288

**SEQ:**
**01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E220504

RECORDING REQUEST BY

WHEN RECORDED MAIL TO

NAME    Carlos R. Acevedo

MAILING
ADDRESS    13159 Vanowen St. #5

CITY, STATE
ZIP CODE    N. Hollywood, CA 91605

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Abstract of Judgment

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and telephone number):
Recording requested by and return to:

CARLOS ACEVEDO

13159 VANOWEN STREET #5
NORTH HOLLYWOOD, CA 91605

☐ ATTORNEY FOR    ☒ JUDGMENT CREDITOR    ☐ ASSIGNEE OF RECORD

FOR RECORDER'S USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 SYLMAR AVENUE
MAILING ADDRESS: 6230 SYLMAR AVENUE
CITY AND ZIP CODE: VAN NUYS, CA 91401
BRANCH NAME: NORTH WEST DISTRICT

PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC.,et al.

CASE NUMBER: LC085378

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS          ☒ Amended

FOR COURT USE ONLY

1. The ☒ judgment creditor ☐ assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
            Name and last known address

   ┌─────────────────────────────────┐
   │ ✗ JORGE ROMERO                  │
   │   7235 ZELZAH AVENUE            │
   │   RESEDA, CA 91335             │
   └─────────────────────────────────┘

   b. Driver's license no. [last 4 digits] and state:          ☒ Unknown
   c. Social security no. ]last 4 digits]:                      ☒ Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address): JORGE ROMERO
      7235 ZELZAH AVENUE RESEDA, CA 91335

2. ☐ Information on additional judgment
      debtors is shown on page 2.

3. Judgment creditor (name and address):
   CARLOS ACEVEDO
   13159 VANOWEN ST. N. HOLLYWOOD,CA
                                        91605

Date: FEBRUARY 13, 2012
   CARLOS ACEVEDO
          (TYPE OR PRINT NAME)          ▶ Carlos R. Acevedo
                                         (SIGNATURE OF APPLICANT OR ATTORNEY)

4. ☐ Information on additional judgment
      creditors is shown on page 2.

5. ☐ Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

6. Total amount of judgment as entered or last renewed:
   $ 137,273.00
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on (date): January 10, 2011
   b. Renewal entered on (date):
9. ☐ This judgment is an installment judgment.

[SEAL]
[court seal: SUPERIOR COURT LOS ANGELES]

This abstract issued on (date):
FEB 2 3 2012

10. ☐ An ☐ execution lien ☐ attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. ☒ not been ordered by the court.
    b. ☐ been ordered by the court effective until
         (date):

12. a. ☒ I certify that this is a true and correct abstract of
           the judgment entered in this action.
    b. ☐ A certified copy of the judgment is attached.

JOHN A. CLARKE
   Clerk, by    L. ROMERO    , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

American LegalNet, Inc.
www.FormsWorkflow.com



| PLAINTIFF: CARLOS ACEVEDO | CASE NUMBER: |
|---|---|
| DEFENDANT: JORGE ROMERO INVESTMENTS, INC.,et al. | LC085378 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*     14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.        Name and last known address

      JORGE ROMERO
      14324 Killion St.
      Sherman Oaks, CA 91401

Driver's license no. [last 4 digits]
and state:                                       ☒ Unknown

Social security no. [last 4 digits]:             ☒ Unknown

Summons was personally served at or mailed to *(address):*

17.        Name and last known address

Driver's license no. [last 4 digits]
and state:                                       ☐ Unknown

Social security no. [last 4 digits]:             ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.        Name and last known address

Driver's license no. [last 4 digits]
and state:                                       ☐ Unknown

Social security no. [last 4 digits]:             ☐ Unknown

Summons was personally served at or mailed to *(address):*

19.        Name and last known address

Driver's license no. [last 4 digits]
and state:                                       ☐ Unknown

Social security no. [last 4 digits]:             ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

EXHIBIT "H"

**ORIGINAL**

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | Central District of California | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Jorge A. Romero

**Case Number:**
1:08-bk-19730-MT

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
People of the State of California

**FILED**

**Name and address where notices should be sent:**
Joyce Tsai, Corporations Counsel, Department of Corporations
1350 Front Street, Suite 2034
San Diego, CA 92101

**Telephone number:**
(619) 525-4043

MAY 20 2013

CLERK U S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

**Filed on:** _____

**Name and address where payment should be sent** (if different from above):

**Telephone number:**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**  $     2,858,734.88

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

**2. Basis for Claim:** Judgment dated 11/18/11
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ✔ Real Estate    ☐ Motor Vehicle    ☐ Other
**Describe:** Abstract of Judgment recorded 4/30/12

**Value of Property:$** _____  **Annual Interest Rate** _____ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $** _____  **Basis for perfection:** _____

**Amount of Secured Claim: $** _____  **Amount Unsecured: $** _____

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain:

☐ Other. Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 5/15/13

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

RECEIVED

NOV 2 2 2011

RECEIVED

OCT 1 9 2011

RECEIVED

DEPT. 69

NOV 1 4 2011

CONFORMED COPY
OF ORIGINAL FILED
LOS ANGELES SUPERIOR COURT

NOV 18 2011

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK
BY:
T. FREEMAN          DEPUTY

1  PRESTON DuFAUCHARD San Diego Office
   California Corporations Commissioner
2  ALAN S. WEINGER
   Deputy Commissioner
3  JOYCE TSAI (SBN 241908)
   Corporations Counsel
4  CALIFORNIA DEPARTMENT OF CORPORATIONS
5  1350 Front Street, Room 2034
   San Diego, California 92101
6  Telephone: (619) 525-4043
7
   Attorneys for the People of the State of California
8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               FOR THE COUNTY OF LOS ANGELES

11  THE PEOPLE OF THE STATE OF          Case No.: BC462695
    CALIFORNIA, by and through the
12  CALIFORNIA CORPORATIONS
    COMMISSIONER,
13
14           Plaintiff,                 [PROPOSED] JUDGMENT BY COURT
                                        AFTER DEFAULT
15       v.

16  JORGE ROMERO INVESTMENTS, INC., a
    California corporation; MAXIMUM RETURN
17  INVESTMENTS, INC., a California
    corporation; and JORGE ROMERO, an
18  individual,

19           Defendants.

20
21

22       1.    On June 2, 2011, Plaintiff, the California Corporations Commissioner

23  ("Commissioner"), filed his Complaint for Permanent Injunction and Ancillary Relief for violation

24  of an Order issued by the Commissioner.

25       2.    The Complaint was brought pursuant to Corporations Code section 25530. It was

26  based on Defendants Jorge Romero Investments, Inc.; Maximum Return Investments, Inc., and Jorge

27  Romero's (collectively, "Defendants") violation of the Order Imposing Penalties and Ancillary

28  Relief ("Order") issued by the Commissioner on February 1, 2011.

1

[PROPOSED] JUDGMENT BY COURT AFTER DEFAULT

State of California - Department of Corporations

3.    The Order was based on the Statement in Support of Order Levying Administrative Penalties Pursuant to Corporations Code section 25252; Claim for Ancillary Relief Pursuant to Corporations Code section 25254; and Desist and Refrain Order ("Statement in Support") that was issued on November 8, 2010. The Statement in Support sought administrative penalties and ancillary relief, and ordered Defendants to desist and refrain from violating Corporations Code sections 25110 and 25401. Defendants did not submit a Notice of Defense or otherwise request a hearing on the Desist and Refrain Order, administrative penalties, or ancillary relief.

4.    Having found that Defendants had not requested a hearing, the Commissioner issued the Order. It ordered Defendants, jointly and severally, to pay the Commissioner the sum of $422,000.00 in administrative penalties for willfully violating Corporations Code sections 25110 and 25401. It also ordered Defendants, jointly and severally, to pay the Commissioner full restitution consisting of investors' investment principal, plus the legal rate of interest, in the total amount of $2,418,867.00. Finally, it ordered Defendants, jointly and severally, to pay the Commissioner attorney's fees, investigative expenses, and costs in the amount of $17,867.88.

5.    Defendants did not seek reconsideration of the Order, file a writ of mandate, or otherwise appeal the Order. Therefore, the Order is final.

6.    Defendants did not make any of the payments ordered by the Commissioner. Defendants did not contacted the Department to request more time to comply with the Order. Defendants are in violation of the Order. Therefore, the Commissioner filed the Complaint.

7.    The Complaint was served on Defendants on June 23, 2011.

8.    The Complaint sought to enjoin Defendants from violating an Order issued by the Commissioner and compel Defendants to comply with the Order. The Complaint further sought ancillary relief pursuant to Corporations Code section 25530, requiring Defendants to pay administrative penalties in the amount of $422,000.00, restitution and interest in the amount of $2,418,867.00, and fees and costs in the amount of $17,867.88, in order to effectuate the terms of the Order.

9.    Defendants have not answered the Complaint. Default was entered against all Defendants on August 26, 2011.

2

1    GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ADJUDGED, ORDERED

2   AND DECREED THAT JUDGMENT BE ENTERED AS FOLLOWS:

3               I.    INJUNCTIVE RELIEF

4          DEFENDANTS and their agents, employees, attorneys in fact in their capacities as such, and

5   all persons acting in concert or participating with them, shall be and are hereby permanently

6   enjoined from violating the Order Imposing Penalties and Ancillary Relief; and

7          DEFENDANTS and their agents, employees, attorneys in fact in their capacities as such, and

8   all persons acting in concert or participating with them, shall be and are hereby ordered to comply

9   with the terms of the Order Imposing Penalties and Ancillary Relief.

10              II.    ANCILLARY RELIEF

11         DEFENDANTS are hereby ordered, jointly and severally, to:

12      1.    Pay the Commissioner $422,000.00 in administrative penalties for Defendants'

13            violations of Corporations Code 25110 and 25401;

14      2.    Pay restitution totaling $1,945,000.00 to investors, plus the legal rate of interest

15            accumulated on the investment principal, in the amount of $473,867.00, for a total of

16            amount of $2,418,867.00; and

17      3.    Reimburse Plaintiff $17,867.88 for investigative expenses, attorney's fees, and costs.

18              III.    THIS COURT TO RETAIN JURISDICTION

19         This Court shall retain jurisdiction of this action in order to implement and carry out the

20   terms of all orders and decrees that may be entered herein or to entertain any suitable application or

21   motion by Plaintiff for additional relief within the jurisdiction of this Court.

22         IT IS SO ORDERED.

23

24   Dated:   NOV 1 8 2011

25                                  JUDGE OF THE SUPERIOR COURT    ᵃᴴᵐᵒⁿᵈ Boe

26

27

28

3

[PROPOSED] JUDGMENT BY COURT AFTER DEFAULT

State of California - Department of Corporations

Case Name: *People v. Jorge Romero Investments, Inc.*

## PROOF OF SERVICE
[Code Civ. Proc. §1013(a)]

I, the undersigned, declare that I am over the age of eighteen (18) years, and not a party to the within entitled action. I am employed at the California Department of Corporations, 1350 Front Street, Room 2034, San Diego, CA 92101.

On the date listed below, I served the following document(s):

**Notice of Entry of Judgment; Judgment By Court After Default**

on the parties in said cause, at the addresses listed below:

Jorge Romero
Jorge Romero Investments, Inc.
Maximum Return Investments, Inc.
7235 Zelzah Ave.
Reseda, CA 91335

☒ U.S. FIRST-CLASS MAIL, U.S. POSTAL SERVICE: by placing a true and correct copy of the aforementioned document(s) in a sealed envelope and placing it in the mail depository at my place of business, with postage prepaid, addressed as listed above.

☐ EXPRESS MAIL: by placing a true and correct copy of the aforementioned document(s), addressed as listed above, in a sealed envelope and depositing in a repository regularly maintained by the U.S. Postal Service for receipt of express mail at [CITY, STATE] location on [DATE] with fees fully prepaid.

☐ FACSIMILE: by transmitting the aforementioned document(s) by facsimile to the parties at the above listed facsimile telephone numbers at [TIME] on [DATE] from (619) 525-4045, which is maintained by the California Department of Corporations, and verifying that the transmission was reported as complete and without error.

☐ ELECTRONIC MAIL: by transmitting the aforementioned document(s) by electronic mail to the parties at [E-MAIL].

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 5, 2011, at San Diego, California.

NINA ROSARIO
Office Technician

-1-

PROOF OF SERVICE

This page is part of your document - DO NOT DISCARD



**20120638541**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

04/30/12 AT 04:06PM

Pages:
0005

| | |
|---|---|
| FEES: | 0.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 0.00 |



**L E A D S H E E T**

201204300760114

00005684432

003936781

SEQ:
01

DAR - Mail (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

04/30/2012

*20120638541*

**WHEN RECORDED MAIL TO**

NAME Joyce Tsai

MAILING 1350 Front St. #2034

**CITY, STATE ZIP CODE**
San Diego CA 92101

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE(S)**

ABSTRACT

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State Bar number, and telephone number)*
Recording requested by and return to

Joyce Tsai (SBN 241908)
California Department of Corporations
1350 Front Street, Suite 2034

San Diego, CA 92101

| X | ATTORNEY FOR | X | JUDGMENT CREDITOR | | ASSIGNEE OF RECORD |

**DEPARTMENT OF CORPORATIONS**
**RECEIVED LOS ANGELES OFFICE**

**MAR 09 2012**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS 111 N. Hill Street
MAILING ADDRESS 111 N. Hill Street
CITY AND ZIP CODE Los Angeles, CA 90012
BRANCH NAME Central District

*FOR RECORDER'S USE ONLY*

PLAINTIFF: People of the State of California, by
and through the California Corporations Commission
DEFENDANT: Jorge Romero Investments, Inc.; Maximum
Return Investments, Inc.; Jorge Romero

CASE NUMBER

BC462695

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**      **Amended**

*FOR COURT USE ONLY*

1. The [ x ] judgment creditor [ ] assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's
Name and last known address

⌐ Jorge Romero
7235 Zelzah Ave.
Reseda, CA 91335            ⌐
L                           ⌐

b. Driver's license No. and state B9553138 California        [ ] Unknown
c. Social security No.:                                      [ x ] Unknown
d. Summons or notice of entry of sister-state judgment was personally served or
mailed to *(name and address):* Jorge Romero
7235 Zelzah Ave.
Reseda, CA 91335

2. [ x ] Information on additional judgment          4. [ ]
debtors is shown on page 2.
3. Judgment creditor *(name and address):*           5.
People of the State of California, 1350
Front Street Rm 2034 San Diego CA 92101
Date: 2/21/12

Joyce Tsai
(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment
creditors is shown on page 2.
5. Original abstract recorded in this county:
a. Date:
b. Instrument No.:

(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
$ 2,858,734.89
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on *(date):* 11/18/11
b. Renewal entered on *(date):*
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
is endorsed on the judgment as follows:
a. Amount: $ 0.00
b. In favor of *(name and address):*

11. A stay of enforcement has
a. [ x ] not been ordered by the court.
b. [ ] been ordered by the court effective until
*(date):*
12. a. [ x ] I certify that this is a true and correct abstract of
the judgment entered in this action.
b. [ ] A certified copy of the judgment is attached.
Clerk, by _____ , Deputy

[SEAL]

John A. Clarke

This abstract issued on *(date):* FEB 27 2012

Clerk, by IRENE CHAN
, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2006]

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**

Legal
Solutions
& Plus

Code of Civil Procedure, §§ 488.480,
674, 700.190
Page 1 of 2

| | | |
|---|---|---|
| PLAINTIFF   People of the State of California, by and through the California Corporations Commissioner | CASE NUMBER | |
| DEFENDANT   Jorge Romero Investments, Inc.; Maximum Return Investments, Inc.; Jorge Romero | BC462695 | |

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13.  Judgment creditor *(name and address):*

14.  Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.                Name and last known address

Jorge Romero Investments, Inc.
7235 Zelzah Ave.
Reseda, CA 91335

Driver's license No. & state: n/a          Unknown
Social security No.: n/a                   Unknown
Summons was personally served at or mailed to *(address):*
7235 Zelzah Ave.
Reseda, CA 91335

17.                Name and last known address

Maximum Return Investments, Inc.
7235 Zelzah Ave.
Reseda, CA 91335

Driver's license No. & state: n/a          Unknown
Social security No.: n/a                   Unknown
Summons was personally served at or mailed to *(address):*
7235 Zelzah Ave.
Reseda, CA 91335

18.                Name and last known address

Driver's license No. & state:              Unknown
Social security No.:                       Unknown
Summons was personally served at or mailed to *(address):*

19.                Name and last known address

Driver's license No. & state:              Unknown
Social security No.:                       Unknown
Summons was personally served at or mailed to *(address):*

20.                Name and last known address

Driver's license No. & state.              Unknown
Social security No.:                       Unknown
Summons was personally served at or mailed to *(address):*

21.                Name and last known address

Driver's license No  & state:              Unknown
Social security No.:                       Unknown
Summons was personally served at or mailed to *(address):*

22. ☐ Continued on Attachment 22.

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Case 1:08-bk-19730-MT   Doc 119   Filed 06/10/13   Entered 06/10/13 15:35:25   Desc
Case 1:08-bk-19730-MT Main Document   Filed 05/29/13   Desc Main Document   Page 10 of
10

Page 10 of

DEPARTMENT OF CORPORATIONS
RECEIVED LOS ANGELES OFFICE

MAR 09 2012

1 | *Case Name: People v. Jorge Romero Investments, Inc.*

2

3 | ### PROOF OF SERVICE
[Code Civ. Proc. §1013(a)]

4 | I, the undersigned, declare that I am over the age of eighteen (18) years, and not a party to the

5 | within entitled action. I am employed at the California Department of Corporations, 1350 Front Street, Room 2034, San Diego, CA 92101.

6

7 | On the date listed below, I served the following document(s):

8 | Abstract of Judgment; Writ of Execution; Memorandum of Costs After Judgment, Acknowledgment of Credit, and Declaration of Accrued Interest

9

10 | on the parties in said cause, at the addresses listed below:

11 | Jorge Romero

12 | Jorge Romero Investments, Inc.
Maximum Return Investments, Inc.

13 | 7235 Zelzah Ave.
Reseda, CA 91335

14

15 | ☒ U.S. FIRST-CLASS MAIL, U.S. POSTAL SERVICE: by placing a true and correct copy of the aforementioned document(s) in a sealed envelope and placing it in the mail depository at

16 | my place of business, with postage prepaid, addressed as listed above.

17 | ☐ EXPRESS MAIL: by placing a true and correct copy of the aforementioned document(s), addressed as listed above, in a sealed envelope and depositing in a repository regularly

18 | maintained by the U.S. Postal Service for receipt of express mail at [CITY, STATE] location on [DATE] with fees fully prepaid.

19

20 | ☐ FACSIMILE: by transmitting the aforementioned document(s) by facsimile to the parties at the above listed facsimile telephone numbers at [TIME] on [DATE] from (619) 525-4045,

21 | which is maintained by the California Department of Corporations, and verifying that the transmission was reported as complete and without error.

22

23 | ☐ ELECTRONIC MAIL: by transmitting the aforementioned document(s) by electronic mail to the parties at [E-MAIL].

24

25 | I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 21, 2012, at San Diego, California.

26

27 | NINA ROSARIO

28 | Office Technician

-1-

PROOF OF SERVICE

State of California - Department of Corporations

EXHIBIT "I"

**This page is part of your document - DO NOT DISCARD**





**20120771090**

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/23/12 AT 02:41PM**

| | |
|---|---|
| FEES: | 37.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 37.00 |



**LEADSHEET**



201205230720046

00005859336



004017987

**SEQ:**
**01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E521957

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME Carlos R. Acevedo

MAILING 13159 Vanowen St. #5

CITY, STATE ZIP CODE
North Hollywood, CA 91605

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Abstract of Judgment

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and telephone number):
Recording requested by and return to:

CARLOS ACEVEDO

13159 VANOWEN ST. #5
NORTH HOLLYWOOD, CA 91605

☐ ATTORNEY FOR   ☑ JUDGMENT CREDITOR   ☐ ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 SYLMAR AVE
MAILING ADDRESS: 6230 SYLMAR AVE
CITY AND ZIP CODE: VAN NUYS, CA 91401
BRANCH NAME: NORTH WEST DISTRICT

FOR RECORDER'S USE ONLY

PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al.

CASE NUMBER: LC085378

FOR COURT USE ONLY

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS        ☑ Amended

1. The ☑ judgment creditor ☐ assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's
Name and last known address

JORGE ROMERO II
7235 ZELZAH AVENUE
RESEDA, CA 91335

b. Driver's license no. (last 4 digits) and state:        ☑ Unknown
c. Social security no. (last 4 digits):                   ☑ Unknown
d. Summons or notice of entry of sister-state judgment was personally served or
mailed to (name and address): JORGE ROMERO II 7235 ZELZAH AVENUE, RESEDA, CA 9133

2. ☑ Information on additional judgment
debtors is shown on page 2.

3. Judgment creditor (name and address):
CARLOS ACEVEDO
13159 VANOWEN ST. #5 NORTH HOLLYWOOD, CA

Date: MAY 8, 2012
CARLOS R. ACEVEDO
(TYPE OR PRINT NAME)

4. ☐ Information on additional judgment
creditors is shown on page 2.

5. ☐ This abstract recorded in this county:
a. Date:
b. Instrument No.:

▶ , Carlos R Acevedo
(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
$ 110,000.00
7. ☐ All judgment creditors and debtors are listed in this abstract.
8. a. Judgment entered on (date): 5/12/2011
b. Renewal entered on (date):
9. ☐ This judgment is an installment judgment.

10. ☐ An ☐ execution lien ☐ attachment lien
is endorsed on the judgment as follows:
a. Amount: $
b. In favor of (name and address):

RECEIVED

MAY 09 2012

L.A.S.C. - Northwest East

11. A stay of enforcement has
a. ☑ not been ordered by the court.
b. ☐ been ordered by the court effective until
(date):
12. a. ☑ I certify that this is a true and correct abstract of
the judgment entered in this action.
b. ☐ A certified copy of the judgment is attached.

[SEAL]
SUPERIOR COURT LOS ANGELES COUNTY

This abstract issued on (date):
MAY 17 2012

JOHN A. CLARKE

Clerk, by L. Romero , Deputy
L. ROMERO

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Code of Civil Procedure, §§ 488.480,
674, 700.190

Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com



PLAINTIFF: CARLOS ACEVEDO

DEFENDANT: JORGE ROMERO INVESTMENTS, INC., et al

CASE NUMBER: LC085378

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*:

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.          Name and last known address

GLOBAL CAPITAL INVESTMENTS INC.
5554 SEDAN AVE.
WOODLAND HILLS, CA 91367

Driver's license no. [last 4 digits]
and state:                               ☑ Unknown

Social security no. [last 4 digits]:     ☑ Unknown

Summons was personally served at or mailed to *(address)*:

17.          Name and last known address

ALEJANDRO SOTO
9155 TOBIAS AVENUE APT. 102(5)
PANORAMA CITY, CA 91402

Driver's license no. [last 4 digits]
and state:                               ☑ Unknown

Social security no. [last 4 digits]:     ☑ Unknown

Summons was personally served at or mailed to *(address)*:

18.          Name and last known address

Driver's license no. [last 4 digits]
and state:                               ☐ Unknown

Social security no. [last 4 digits]:     ☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.          Name and last known address

Driver's license no. [last 4 digits]
and state:                               ☐ Unknown

Social security no. [last 4 digits]:     ☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

EXHIBIT "J"

## DECLARATION OF MOHAMMAD BAGHERI IN SUPPORT OF
## MOTION TO EXTIGUINSH SECOND DEED OF TRUST (LIEN) OF WILSHIRE
## CREDIT CORPORATION

I, Mohammad Bagheri, a licensed appraiser, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements

1   I am making this declaration in support of the Motion to Extinguish Lien of Wilshire Credit Corporation.

2   On or about November 27, 2008, I appraised real property located at 7235 Zelzah Avenue, Reseda, CA 91335 (hereinafter the "Subject Property").

3   Pursuant to my appraisal, the value of the Subject Property on or about November 27, 2008 was valued at $407,000.00.  Attached hereto as Exhibit "A" is a true and correct copy of my appraisal of the Subject Property.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on March 9, 2009, at Sherman Oaks California

M. Bagfhi
Mohammad Bagheri

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
7235 ZELZAH AVENUE
89 S .82 93 FT OF  E 135 FT OF LOT 162 (FOR  MORE DETAIL  SEE TITLE
L A (RESEDA AREA), CA 91335



**FOR:**
BOMERO J A 2007 LIVING TRUST
7235 ZELZAH AVENUE
RESEDA, CA 91335

**AS OF:**
11/27/2008

**BY:**
M  BAGHERI

Form GA3 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## SUMMARY OF SALIENT FEATURES

| | |
|---|---|
| Subject Address | 7235 ZELZAH AVENUE |
| Legal Description | TRACT#4789 S. 82 93 FT OF E 135 FT OF LOT 162 (FOR MORE DETAIL SEE TITL |
| City | L A (RESEDA AREA) |
| County | LOS ANGELES |
| State | CA |
| Zip Code | 91335 |
| Census Tract | 1318.A4 |
| Map Reference | 531-A4 |
| Sale Price | $ N/A |
| Date of Sale | N/A |
| Borrower | ROMERO J A 2007 LIVING TRUST |
| Lender/Client | ROMERO J A 2007 LIVING TRUST |
| Size (Square Feet) | 1,954 |
| Price per Square Foot | $ |
| Location | AVERAGE |
| Age | 54 YEARS |
| Condition | AVERAGE |
| Total Rooms | 7 |
| Bedrooms | 4 |
| Baths | 2 |
| Appraiser | M BAGHERI |
| Date of Appraised Value | 11/27/2008 |
| Opinion of Value | $ 407,000 |

Form SSD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Case 1:08-bk-19730-MT    Doc 119    Filed 06/10/13    Entered 06/10/13 15:35:25    Desc
Main Document    Page 117 of 135

Case 1:08-bk-19730-MT    Doc 20-3    Filed 03/09/09    Entered 03/09/09 16:32:29    Desc
Uniform Residential Appraisal Report    Page 4 of 20

ROMERO
File # 20081126

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 7235 ZELZAH AVENUE | City L A (RESEDA AREA) State CA Zip Code 91335 |
| Borrower ROMERO J A 2007 LIVING TRUST | Owner of Public Record ROMERO J A 2007 LIVING TRUST County LOS ANGELES |

Legal Description TRACT#4789 S 82 93 FT OF E 135 FT OF LOT 162 (FOR MORE DETAIL SEE TITLE REPORT)

Assessor's Parcel # 2121-008-003    Tax Year 2008    R E Taxes $ 2,973 34

Neighborhood Name N/A    Map Reference 531-A4    Census Tract 1318 A4

Occupant [x] Owner [ ] Tenant [ ] Vacant    Special Assessments $ N/A    [ ] PUD HOA $ N/A [ ] per year [ ] per month

Property Rights Appraised [x] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [x] Other (describe) ESTIMATING FAIR MARKET VALUE FOR CLIENT

Lender/Client ROMERO J A 2007 LIVING TRUST    Address 7235 ZELZAH AVENUE, RESEDA, CA 91335

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [x] No

Report data source(s) used, offering price(s), and date(s). MLS , OWNER SUBJECT HAS NOT BEEN LISTED OR OFFERED FOR SALE IN PAST 12 MONTHS

[ ] I did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If yes, report the total dollar amount and describe the items to be paid.    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [x] Suburban [ ] Rural | | | Property Values [ ] Increasing [x] Stable [ ] Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 82 % |
| Built-Up [x] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [x] In Balance [ ] Over Supply | | | | | 2-4 Unit 2 % |
| Growth [ ] Rapid [x] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [x] 3-6 mths [ ] Over 6 mths | | | 295 Low 4 | | Multi-Family 6 % |
| Neighborhood Boundaries ROSCOE BLVD TO NORTH, BALBOA BLVD. TO EAST, VICTORY BLVD | | | | | | 505 High 95 | | Commercial 10 % |
| TO SOUTH AND TAMPA AVENUE TO WEST | | | | | | 410 Pred 55 | | Other % |

Neighborhood Description See Additional Comments Section

Market Conditions (including support for the above conclusions) ACCORDING TO LOCAL REAL ESTATE BROKER, REAL ESTATE MARKET IN THE AREA CURRENTLY IS LESS ACTIVE COMPARE TO SAME TIME LAST YEAR. CURRENT AVERAGE MARKETING TIME IS MORE THAN 6 MONTHS AND PRICES HAVE SLIGHTLY DECLINED COMPARE TO LAST YEAR AND CURRENTLY ARE FLAT OVER LAST 6 MONTHS

| | | | | |
|---|---|---|---|---|
| Dimensions PLEASE SEE PLAT MAP | | Area 11,194 | Shape RECTANGULAR | View NONE |
| Specific Zoning Classification LAR1 | | | Zoning Description SINGLE FAMILY RESIDENTIAL | |

Zoning Compliance [x] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [x] Yes [ ] No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [x] | | Water | [x] | | Street ASPHALT | | [x] |
| Gas | [x] | | Sanitary Sewer | [x] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [x] No   FEMA Flood Zone C   FEMA Map # 0601370028C   FEMA Map Date 12/02/1980

Are the utilities and off-site improvements typical for the market area? [x] Yes [ ] No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [x] No If Yes, describe
NO ADVERSE CONDITION NOTED THE SUBJECT IS NOT LOCATED IN FLOOD HAZARD AREA

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [x] One [ ] One with Accessory Unit | Concrete Slab | [x] Crawl Space | Foundation Walls | STUCCO/AVG | Floors | WOOD CRPT/AVG |
| # of Stories ONE | [ ] Full Basement | [ ] Partial Basement | Exterior Walls | STUCCO/AVG | Walls | DRYWALL/AVG |
| Type [x] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area NONE sq ft | | Roof Surface | COMP /AVG | Trim/Finish | PAINT/AVG |
| [x] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | | Gutters & Downspouts NONE | | Bath Floor | TILE/AVG |
| Design (Style) AVERAGE | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type ALUM /AVG | | Bath Wainscot TILE/AVG | |
| Year Built 1954 | Evidence of [ ] Infestation | | Storm Sash/Insulated NONE | | Car Storage [ ] None | |
| Effective Age (Yrs) 20-25 | [ ] Dampness [ ] Settlement | | Screens SCREEN/AVG | | [x] Driveway # of Cars 2 | |
| Attic [ ] None | Heating [ ] FWA [ ] HWBB [ ] Radiant | | Amenities | Woodstove(s) # | Driveway Surface CONCRETE | |
| [ ] Drop Stair [ ] Stairs | [ ] Other FAU Fuel GAS | | [x] Fireplace(s) # 1 [x] Fence BLOCK | | [x] Garage # of Cars 2 | |
| [ ] Floor [x] Scuttle | Cooling [x] Central Air Conditioning | | [x] Patio/Deck SLAB [ ] Porch COVER | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | | [ ] Pool [x] Other REC ROM | | [ ] Att. [ ] Det. [ ] Built-in | |

Appliances [x] Refrigerator [x] Range/Oven [x] Dishwasher [x] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe)

Finished area above grade contains: 7 Rooms 4 Bedrooms 2 Bath(s) 1,954 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). WALL TO WALL WOOD AND CARPET FLOORING, WOOD CABINETRY IN WITH BUILT IN APPLIANCES IN KITCHEN, FIREPLACE, SLAB PATIO, COVER PORCH ,REC. ROOM, AND CAR ATTACHED GARAGE

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). DEPRECIATION IS DUE TO EFFECTIVE AGE, NO FUNCTIONAL OR EXTERNAL INADEQUATIVE NOTED. THE SUBJECT IS IN AVERAGE CONDITION. ESTIMATED ECONOMIC AGE REMAINING 40-45

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [x] No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [x] Yes [ ] No If No, describe

ROMERO
File # 20081126

| There are | 12 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 350,000 | | to $ 410,000 |
| There are | 64 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 295,000 | | to $ 505,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 7235 ZELZAH AVENUE L A (RESEDA AREA), CA 91335 | 6856 NEWCASTLE AVENUE APN # 2122-008-005 | | 7230 NEWCASTLE AVENUE APN # 2121-006-010 | | 17619 SATICOY STREET APN # 2202-002-034 | |
| Proximity to Subject | | 0.45 miles S | | 0.12 miles W | | 0.51 miles NE | |
| Sale Price | $ N/A | | $ 390,000 | | $ 397,000 | | $ 450,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 169.49 sq.ft. | | $ 248.75 sq.ft. | | $ 205.29 sq.ft. | |
| Data Source(s) | | FIRST AMERICAN R.E.S | | FIRST AMERICAN R E S | | FIRST AMERICAN R E S | |
| Verification Source(s) | | PUBLIC RECORD,MLS | | PUBLIC RECORD,MLS | | PUBLIC RECORD,MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing | | CONV | | CONV | | CONV | |
| Concessions | | DOC #1777133 | | DOC#1584410 | | DOC#1759955 | |
| Date of Sale/Time | | 10/03/2008 | | 09/03/2008 | | 10/01/2008 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | TRAFFIC/AVG | +5,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 11,194 | 6,612 | | 7,252 | | 7,840 | |
| View | NONE | NONE | | NONE | | NONE | |
| Design (Style) | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 54 YEARS | 58 YEARS | | 31 YEARS | -5,000 | 12 YEARS | -20,000 |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total 7 Bdrms 4 Baths 2 | Total 5 Bdrms 3 Baths 2 | +2,000 | Total 5 Bdrms 3 Baths 2 | +2,000 | Total 6 Bdrms 4 Baths 3 | -2,000 |
| Room Count | | | | | | | |
| Gross Living Area | 1,954 sq.ft. | 2,301 sq.ft. | -12,000 | 1,596 sq.ft. | +13,000 | 2,192 sq.ft. | -8,000 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | SIMILAR | | SIMILAR | | SIMILAR | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2-GARAGE | 2-GARAGE | | 2-GARAGE | | 3-GARAGE | -5,000 |
| Porch/Patio/Deck | PORCH,PATIO | SIMILAR | | SIMILAR | | SIMILAR | |
| FIREPLACE | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| FENCE/POOL | FENCE/NONE | FENCE/NONE | | FENCE/NONE | | FENCE/NONE | |
| DAYS ON MARKET | 0 DAYS | 21 DAYS | | 84 DAYS | | 31 DAYS | |
| Net Adjustment (Total) | | + [X] - | -10,000 | [X] + - | 10,000 | + [X] - | -30,000 |
| Adjusted Sale Price | | Net Adj. 2.5% | | Net Adj. 2.5% | | Net Adj. 6.7% | |
| of Comparables | | Gross Adj. 3.6% $ | 380,000 | Gross Adj. 5.0% $ | 407,000 | Gross Adj. 8.9% $ | 420,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   FARES/MLS
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   FARES/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST |
| Price of Prior Sale/Transfer | 36 MONTHS | 12 MONTHS | 12 MONTHS | 12 MONTHS |
| Data Source(s) | FARES/MLS | FARES/MLS | FARES/MLS | FARES/MLS |
| Effective Date of Data Source(s) | 11/26/2008 | 11/26/2008 | 11/26/2008 | 11/26/2008 |

Analysis of prior sale or transfer history of the subject property and comparable sales   SUBJECT'S TITLE HAS NOT BEEN TRANSFERRED IN PAST 36
MONTHS

COMPARABLES HAVE NOT BEEN TRANSFERRED IN PAST 12 MONTHS.

Summary of Sales Comparison Approach   See Additional Comments Section

Indicated Value by Sales Comparison Approach $ 407,000
Indicated Value by: Sales Comparison Approach $ 407,000   Cost Approach (if developed) $ 410,055   Income Approach (if developed) $ N/A
DUE TO INFLUENCE OF INFORMED BUYERS AND SELLERS, THE SALE COMPARISON APPROACH IS DEEMED TO BE THE MOST
RELIABLE INDICATORS OF VALUE. COST APPROACH IS IN GENERAL AGREEMENT. INCOME APPROACH IS NOT USED DUE TO
LIMITED RENTAL DATA.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair. See Additional Comments Section

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 407,000 , as of 11/27/2008 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                Page 2 of 6                Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Case 1:08-bk-19730-MT    Doc 119    Filed 06/10/13    Entered 06/10/13 15:35:25    Desc
Main Document        Page 119 of 135

Case 1:08-bk-19730-MT    Doc 20-3    Filed 03/09/09    Entered 03/09/09 16:32:29    Desc
Uniform Residential Appraisal Report        File # 20081126        ROMERO

**• URAR : Neighborhood - Description**
SUBJECT IS LOCATED IN AN AREA OF ONE TO TWO STORY SINGLE FAMILY RESIDENCES WITH AVERAGE TO GOOD QUALITY AND CONDITION NO ADVERSE CONDITIONS NOTED THAT WOULD NEGATIVELY AFFECT THE MARKETABILITY OF THE SUBJECT PROPERTY. SUBJECT IS LOCATED IN SIMILAR PROXIMITY TO SHOPPING,SCHOOLS AND OTHER COMMUNITY FACILITIES AND SERVICES AS ARE THE COMPARABLE.

**• URAR : Sales Comparison Analysis - Summary of Sales Comparison Approach**
SEVERAL OTHER SALES IN THE SIMILAR TYPE PROPERTIES WERE INSPECTED (EXTERIOR ONLY) ,HOWEVER AFTER CAREFUL CONSIDERATION THE SALES USED IN THIS REPORT    WERE FOUND TO BE THE BEST COMPARABLE WITH THE SUBJECT AND WHAT AN INFORMED BUYER MOST TYPICALLY EXPECT    ADJUSTMENT    TO COMPARABLE REFLECTS DEFERENCE IN UTILITY TO THE BUYERS. ALL COMPARABLE ARE PROXIMATE IN AREA  LIVING AREA VARIANCES ADJUSTED $35 PER SQ FT. THE ROOM COUNT ADJUSTED $2,000 PER BED AND BATH. ALL OTHER ADJUSTMENT ARE SELF EXPLANATORY  COMPARABLE#5 AND #6 ARE CURRENT LISTINGS WITH IN SUBJECT MARKET AREA WHICH PROVIDE ADDITIONAL SUPPORT FOR ESTIMATED VALUE AND INDICATE CURRENT MARKET TREND. ALL COMPARABLE ARE PROXIMATE IN AREA AND REELECT THE RANGE OF VALUE FOUND FOR COMPARABLE  SIMILAR TO SUBJECT . THE MARKET BRACKET VALUE IS FROM $380,000 TO $422,000. ALL COMPARABLE WERE CONSIDER IN ESTIMATION OF FINAL VALUE HOWEVER THE FINAL VALUE IS GIVEN TOWARD THE LOWER END.

**• URAR : Conditions of Appraisal**
THIS APPRAISAL WAS DONE AS "SUMMARY" REPORT  NO CONDITION HAS BEEN NOTED  THIS APPRAISAL DONE IN"AS IS CONDITION" THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY CLIENT FOR PERSONAL USE AND ASSISTING TO DETERMINE THE SUBJECT FAIR MARKET VALUE ONLY THIS APPRAISAL IS NOT FOR ANY OTHER USE

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    LAND VALUE WAS DERIVED THROUGH EXTRACTION AND ITS RATIO TO IMPROVEMENTS VALUE IS TYPICAL FOR THE AREA

| ESTIMATED [ ] REPRODUCTION OR [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 225,000 |
|---|---|---|---|---|
| Source of cost data  MARSHALL & SWIFT/ LOCAL BUILDERS | DWELLING | 1,954 Sq Ft @ $ 105.00 | =$ | 205,170 |
| Quality rating from cost service  B       Effective date of cost data  CURRENT | NONE  Sq Ft @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | REC. ROOM | | =$ | 25,000 |
| PLEASE SEE ATTACHED DIAGRAM   LAND TO IMPROVEMENT | Garage/Carport | 432 Sq Ft @ $ 75.00 | =$ | 32,400 |
| RATIO IS TYPICAL FOR THE AREA  PHYSICAL DEPRECIATION IS | Total Estimate of Cost-New | | =$ | 262,570 |
| BASED ON THE AGE/LIFE METHOD  COST NEW IS BASED ON THE | Less      Physical      Functional      External | | | |
| MARSHAL & SWIFT RESIDENTIAL COST HAND BOOK AND LOCAL | Depreciation          87,515 | | =$( | 87,515) |
| BUILDERS. LAND VALUE WAS DERIVED VIA THE EXTRACTION | Depreciated Cost of Improvements | | =$ | 175,055 |
| METHOD. NO EXTERNAL OR FUNCTIONAL OBSOLESCENCE | "As-is" Value of Site Improvements | | =$ | 10,000 |
| NOTED. ESTIMATED REMAINING LIFE IS 40-45 YEARS | | | | |
| Estimated Remaining Economic Life (HUD and VA only)          40 Years | INDICATED VALUE BY COST APPROACH | | =$ | 410,055 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $       N/A       X Gross Rent Multiplier     N/A     = $     N/A | Indicated Value by Income Approach |
|---|---|
| Summary of Income Approach (including support for market rent and GRM)       N/A | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes  [ ] No   Unit type(s)  [ ] Detached  [ ] Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases                     Total number of units     N/A               Total number of units sold
Total number of units rented               Total number of units for sale   N/A         Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?   [ ] Yes   [ ] No  Data Source
Are the units, common elements, and recreation facilities complete?    [ ] Yes   [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   [ ] Yes  [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.  N/A

---

Freddie Mac Form 70 March 2005                    Page 3 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc  — 1-800-ALAMODE

Case 1:08-bk-19730-MT   Doc 119   Filed 06/10/13   Entered 06/10/13 15:35:25   Desc
Main Document   Page 120 of 135
Case 1:08-bk-19730-MT   Doc 20-3   Filed 03/09/09   Entered 03/09/09 16:32:29   Desc
Uniform Residential Appraisal Report

ROMERO
File # 20081126

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

ROMERO
File # 20081126

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

ROMERO
File # 20081126

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER   THIS APPRAISAL HAS BEEN SIGNED DIGITALLY | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  M BAGHERI | Name |
| Company Name | Company Name |
| Company Address  16362 MANDALAY DR., ENCINO, CA 91436 | Company Address |
| Telephone Number  (818)981-7008 | Telephone Number |
| Email Address  GALAXY12@SBCGLOBAL.NET | Email Address |
| Date of Signature and Report  11/27/2008 | Date of Signature |
| Effective Date of Appraisal  11/27/2008 | State Certification # |
| State Certification # | or State License # |
| or State License #  AR025950 | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  8/28/2009 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 7235 ZELZAH AVENUE | ☐ Did inspect exterior of subject property from street |
| L.A.(RESEDA AREA), CA 91335 |    Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  407,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT |    Date of Inspection |
| Name | |
| Company Name  ROMERO J A 2007 LIVING TRUST | COMPARABLE SALES |
| Company Address  7235 ZELZAH AVENUE, RESEDA, CA 91335 | ☐ Did not inspect exterior of comparable sales from street |
| Email Address | ☐ Did inspect exterior of comparable sales from street |
|  |    Date of Inspection |

## Uniform Residential Appraisal Report

ROMERO
File # 20081126

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 7235 ZELZAH AVENUE | 6445 BERTRLAND AVENUE | | 8025 MCDERMOTT AVENUE | | 18139 WELBY WAY | |
| | L A (RESEDA AREA), CA 91335 | APN #2123-012-005 | | APN # 2101-013-023 | | APN # 2125-020-033 | |
| Proximity to Subject | | 0.99 miles S | | 1.00 miles N | | 0.71 miles SW | |
| Sale Price | $        N/A | | $     415,000 | | $    400,000 | | $    400,000 |
| Sale Price/Gross Liv. Area | $        sq.ft. | $    235.93 sq.ft. | | $    224.47 sq.ft. | | $    222.97 sq.ft. | |
| Data Source(s) | | FIRST AMERICAN R E S | | FIRST AMERICAN R E S | | FIRST AMERICAN R E S | |
| Verification Source(s) | | PUBLIC RECORD,MLS | | PUBLIC RECORD,MLS | | PUBLIC RECORD MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CONV | | LISTING 5% DI | | LISTING 5% DI | |
| Concessions | | DOC#1759210 | | ML#F1748781 | -20,000 | ML#F1778577 | -20,000 |
| Date of Sale/Time | | 10/01/2008 | | ACTIVE | | PENDING | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 11,194 | 6,220 | | 6,000 | | 6,094 | |
| View | NONE | NONE | | NONE | | NONE | |
| Design (Style) | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 54 YEARS | 58 YEARS | | 54 YEARS | | 57 YEARS | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total 7 Bdrms 4 Baths 2 | Total 7 Bdrms 4 Baths 2 | | Total 7 Bdrms 5 Baths 2 | -2,000 | Total 5 Bdrms 3 Baths 2 | +2,000 |
| Room Count | | | | | | | |
| Gross Living Area | 1,954 sq.ft. | 1,759 sq.ft. | +7,000 | 1,782 sq.ft. | +6,000 | 1,794 sq.ft. | +6,000 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | SIMILAR | | SIMILAR | | SIMILAR | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2-GARAGE | 2-GARAGE | | 1-GARAGE | +5,000 | 2-GARAGE | |
| Porch/Patio/Deck | PORCH,PATIO | SIMILAR | | SIMILAR | | SIMILAR | |
| FIREPLACE | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| FENCE/POOL | FENCE/NONE | FENCE/NONE | | FENCE/NONE | | FENCE/NONE | |
| DAYS ON MARKET | 0 DAYS | 152 DAYS | | 323 DAYS | | 178 DAYS | |
| Net Adjustment (Total) | | ☐ + ☐ - | $    7,000 | ☐ + ☑ - | $    -11,000 | ☐ + ☑ - | $    -12,000 |
| Adjusted Sale Price | | Net Adj.    1.7 % | | Net Adj    2.8 % | | Net Adj.    3.0 % | |
| of Comparables | | Gross Adj.  1.7 % | $    422,000 | Gross Adj.  8.3 % | $    389,000 | Gross Adj.  7.0 % | $    388,000 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST | NO PRIOR SALE IN PAST |
| Price of Prior Sale/Transfer | 36 MONTHS | 12 MONTHS | 12 MONTHS | 12 MONTHS |
| Data Source(s) | FARES/MLS | FARES/MLS | FARES/MLS | FARES/MLS |
| Effective Date of Data Source(s) | 11/26/2008 | 11/26/2008 | 11/26/2008 | 11/26/2008 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004 (AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State | CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | | |



Form SKT BtUSU — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Case 1:08-bk-19730-MT    Doc 20-3    Filed 03/09/09    Entered 03/09/09 16:32:29    Desc
Exhibit A2    Page 12 of 20

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | | |
| City | L.A (RESEDA AREA) | County | LOS ANGELES | State | CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | | |



Location Map

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | |
|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | |
|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | |
| City | L A (RESEDA AREA) | County LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | |



**Subject Front**

7235 ZELZAH AVENUE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,954 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 11,194 |
| Quality | AVERAGE |
| Age | 54 YEARS |



**Subject Rear**



**Subject Street**

Form PIC3x5.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Photograph Addendum

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | |
|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | |



FRONT INSIDE GATE



INTERIOR



INTERIOR

Form GPIC3X5 — "WinTOTAL" appraisal software by a la mode, inc — 1-800-ALAMODE

Photograph Addendum

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | |
|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | |



INTERIOR



INTERIOR



INTERIOR

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | |
|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | |



### Comparable 1

6856 NEWCASTLE AVENUE
| | |
|---|---|
| Prox. to Subject | 0 45 miles S |
| Sale Price | 390,000 |
| Gross Living Area | 2,301 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 6,612 |
| Quality | AVERAGE |
| Age | 58 YEARS |



### Comparable 2

7230 NEWCASTLE AVENUE
| | |
|---|---|
| Prox. to Subject | 0 12 miles W |
| Sale Price | 397,000 |
| Gross Living Area | 1,596 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 7,252 |
| Quality | AVERAGE |
| Age | 31 YEARS |



### Comparable 3

17619 SATICOY STREET
| | |
|---|---|
| Prox. to Subject | 0 51 miles NE |
| Sale Price | 450,000 |
| Gross Living Area | 2,192 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | TRAFFIC/AVG |
| View | NONE |
| Site | 7,840 |
| Quality | AVERAGE |
| Age | 12 YEARS |

Case 1:08-bk-19730-MT    Doc 119    Filed 06/10/13    Entered 06/10/13 15:35:25    Desc
Main Document    Page 131 of 135

Case 1:08-bk-19730-MT    Doc 20-3    Filed 03/09/09    Entered 03/09/09 16:32:29    Desc
Comparable Photo Page    Exhibit A2    Page 18 of 20

| Borrower/Client | ROMERO J A 2007 LIVING TRUST | | | | |
|---|---|---|---|---|---|
| Property Address | 7235 ZELZAH AVENUE | | | | |
| City | L A (RESEDA AREA) | County | LOS ANGELES | State CA | Zip Code 91335 |
| Lender | ROMERO J A 2007 LIVING TRUST | | | | |



### Comparable 4

| | |
|---|---|
| | 6445 BERTRLAND AVENUE |
| Prox. to Subject | 0.99 miles S |
| Sale Price | 415,000 |
| Gross Living Area | 1,759 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 6,220 |
| Quality | AVERAGE |
| Age | 58 YEARS |



### Comparable 5

| | |
|---|---|
| | 8025 MCDERMOTT AVENUE |
| Prox. to Subject | 1.00 miles N |
| Sale Price | 400,000 |
| Gross Living Area | 1,782 |
| Total Rooms | 7 |
| Total Bedrooms | 5 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 6,000 |
| Quality | AVERAGE |
| Age | 54 YEARS |



### Comparable 6

| | |
|---|---|
| | 18139 WELBY WAY |
| Prox. to Subject | 0.71 miles SW |
| Sale Price | 400,000 |
| Gross Living Area | 1,794 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | NONE |
| Site | 6,094 |
| Quality | AVERAGE |
| Age | 57 YEARS |



STATE OF CALIFORNIA

Business, Transportation & Housing Agency

## OFFICE OF REAL ESTATE APPRAISERS

# REAL ESTATE APPRAISER LICENSE

OREA APPRAISER IDENTIFICATION NUMBER    AR025950

## MOHAMMAD BAGHERI

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title "Certified Residential Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

OFFICE OF REAL ESTATE APPRAISERS

Date Issued:  August 29, 2007
Date Expires: August 28, 2009

Audit No.  098075

THIS DOCUMENT CONTAINS A TRUE WATERMARK   HOLD UP TO LIGHT TO SEE "SAFE" AND "VERIFY FIRST"

Form SCA — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



## COVER NOTE

INSURED: Mohammad Baghaii

MAILING ADDRESS: 16362 Mandale Drive
Encino, CA 91436

*This is to certify that the undersigned has procured insurance coverage as hereafter specified from certain companies and or underwriters.*

EFFECTIVE: 5-5-2008      EXPIRATION: 5-5-2009

COVERAGE: Professional Liability for Specified Professions

- Profession: Real Estate Appraiser
- Claims Made Form: MPL-26001 (9/87)
- Retroactive Date: 2-2-1994
- Limits: Per Occurrence: $1,000,000    Annual Aggregate: $1,000,000
- Deductible: $1,000

### CONDITIONS

- Real Estate Agent/Broker Referral Indemnity
- Knowledge of Wrongful Act Exclusion
- Pending and or Prior Litigation Exclusion
- Defense within Policy Limit
- Deductible Includes Loss Adjustment Expenses

### COMPANIES PARTICIPATING:

Indian Harbor Insurance Company, of Pittsburgh PA

### ASSIGNED COVER NOTE #: ZFRE.I 05-6690

Issued at: 4770 Mesa Blvd, Suite 140
San Diego, CA 92117

DATE: May 5, 2008      BY:

*Insurance when effected shall be subject to all terms and conditions of policy (ies) which will be issued, and in the event of any inconsistency herewith, the terms and provisions of the policy prevail.*

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _06/10/2013_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| Elizabeth F. Rojas | cacb_ecf_sv@ch13wla.com |
|---|---|
| United States Trustee | ustpregion16.wh.ecf@usdoj.gov |
| Alvarado & Associates | generalmail@alvaradoca.com |
| Sevag Nigoghosian | sevag@snlawoffices.com |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _06/10/2013_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _06/10/2013_ | _Maria Diaz_ | |
|---|---|---|
| Date | Printed Name | Signature |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**CONTINUED SERVICE LIST**

**Judge's Copy**
Honorable Maureen Tighe
21041 Burbank Boulevard
Courtroom 302
Woodland Hills, CA 91367

**Debtor**
Jorge A. Romero
7235 Zelzah Avenue
Reseda, CA 91335

**Countrywide Home Loans (Statement Address)(Certified Mail)**
Attn: Mr. Brian Moynihan, CEO
PO Box 5170
Simi Valley, CA 93062-5170

**Countrywide Home Loans (Entity Address)(Certified Mail)**
Attn: Mr. Brian Moynihan, CEO
150 N. College Street
NC1-028-17-06
Charlotte, NC 28255

**Agent for Service of Process for Countrywide Home Loans (Certified Mail)**
CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

**U.S. Bank, N.A. (Corporate HQ & Entity Address)(Certified Mail)**
c/o US Bancorp
Attn: Richard K. Davis, CEO
800 Nicollet Mall
Minneapolis, MN 55402

**Agent for Service of Process for U.S. Bank, N.A. (Certified Mail)**
CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

**U.S. Bank, N.A. (Proof of Claim)(Certified Mail)**
c/o Wilshire Credit Corporation
Attn: Anita Frank, Legal Assistant
PO Box 1650
Portland, OR 97207-1650

**Counsel for Carlos R. Acevedo (Certified Mail)**
c/o Sevag Nigoghosian, Esq.
Law Offices of Sevag Nigoghosian
101 N. Brand Blvd., Suite 1970
Glendale, CA  91203

**Carlos R. Acevedo (Judgment Addresses)(Certified Mail)**
13159 Vanowen Street #5
North Hollwyood, CA 91605

**California Corporations Commission (Judgment & Proof of Claim)(Certified Mail)**
Attn: Joyce Tsai, Esq.
1350 Front St., Suite 2034
San Diego, CA 92101-3697

**California Corporations Commission (Website Address)(Certified Mail)**
c/o California Secretary of State
1500 11th Street
Sacramento, CA 95814